[Cite as *State v. Beaver*, 2018-Ohio-2438.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

           CASE NO. 9-17-37

    v.

DAVID A. BEAVER,

           O P I N I O N

    DEFENDANT-APPELLANT.

---

**Appeal from Marion County Common Pleas Court**
**Trial Court No. 17-CR-056**

**Judgment Affirmed**

**Date of Decision:  June 25, 2018**

---

APPEARANCES:

    *Robert C. Nemo* **for Appellant**

    *Kevin P. Collins* **for Appellee**

**WILLAMOWSKI, P.J.**

{¶1} Defendant-appellant David A. Beaver ("Beaver") appeals the judgment of the Marion County Court of Common Pleas. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} T.B. was born to Beaver and Kristina Beaver ("Kristina") in 2012. Doc. 60. Kristina and Beaver divorced in 2015. Ex. 15. Following this divorce, Beaver had visitation with T.B. every other weekend. Trial Tr. 427. On April 24, 2016, after one of these weekend visits, Beaver drove T.B. to the designated drop off location where Kristina was waiting in her car. *Id*. at 409, 413. When T.B. got into the car, she told Kristina that Beaver had inappropriately touched her. *Id*. at 323, 446. This led Kristina to take T.B. to the Adena Regional Medical Center ("ARMC") where T.B. was examined by a sexual assault nurse examiner. *Id*. at 137-139. The nurse took T.B.'s panties as forensic evidence and noted that T.B. had some redness on her labia. *Id*. at 143-144.

{¶3} The ARMC referred Kristina to the Child Protection Center in Ross County ("CPC") for further consultation. Doc. 90. On May 4, 2016, Kristina took T.B. to the CPC. Doc. 90. Ashley Muse ("Muse"), a child abuse specialist, interviewed T.B. while a physician, Dr. Jetty, observed T.B. from another room. Doc. 90. Trial Tr. 280. During this interview, T.B. explained what her father had done to her. Ex. 13. The CPC made a video recording of this interview. Ex. 13.

After the initial interview with Muse, Dr. Jetty had a further interview with T.B. Trial Tr. 283. The video of this interview was later admitted into evidence. *Id*. at 474. T.B.'s panties were then tested by the Ohio Bureau of Criminal Investigations ("BCI"). *Id*. at 208. The investigators found Beaver's saliva on the front interior panel of T.B.'s panties. *Id*. at 211, 259-260. No semen was found on the panties. *Id*.

{¶4} On February 9, 2017, Beaver was charged with one count of gross sexual imposition in violation of R.C. 2907.05(A)(4) and one count of rape in violation of R.C. 2907.02(A)(1)(b). Doc. 1. On May 31, 2017, the trial court held a hearing to determine whether T.B. was competent to testify at a trial. Competency Hearing Tr. 2. During this hearing, T.B. had difficulty focusing and sitting still. Doc. 60. The trial court gave the State an opportunity to present additional evidence as to T.B.'s competency at a later evidentiary hearing. Doc. 60. On June 30, 2017, the trial court interviewed T.B. again and determined that she was competent to testify. Evidentiary Hearing Tr. 2, 69-70. Doc. 89. At this evidentiary hearing, the trial court also considered the admissibility of the videotaped CPC interview. *Id*. The trial court denied Beaver's motion in limine as to the video interview. Doc. 90, 149.

{¶5} On August 17, 2017, the jury found Beaver guilty of both charges. Doc. 154, 155. Beaver was sentenced on August 23, 2017. Doc. 169. Appellant then

filed his notice of appeal on September 14, 2017.  Doc. 175.  On appeal, appellant

raises the following seven assignments of error:

**First Assignment of Error**

**The trial court erred to the prejudice of appellant by finding T.B. competent to testify.**

**Second Assignment of Error**

**The trial court committed prejudicial error by allowing the jury to hear the videotape interview of T.B.**

**Third Assignment of Error**

**The trial court committed prejudicial error by denying appellant's motion for mistrial.**

**Fourth Assignment of Error**

**Appellant was denied his constitutional right to effective assistance of counsel.**

**Fifth Assignment of Error**

**The trial court erred when it failed to sustain appellant's Rule 29 motion for acquittal.**

**Sixth Assignment of Error**

**Appellant's conviction was against the manifest weight of the evidence.**

**Seventh Assignment of Error**

**The combination of the aforementioned errors are sufficient to call into question the validity of the verdict, preventing appellant from obtaining a fair trial.**

*First Assignment of Error*

**{¶6}** In his first assignment of error, Beaver argues that the trial court erred when it found that T.B. was competent to testify. Beaver alleges that T.B. was unable to focus, could not recollect impressions or observations, gave inconsistent answers, and was not able to appreciate the importance of truthfulness in this proceeding.

Legal Standard

**{¶7}** As a general rule, a child under the age of ten is incompetent to testify if he or she "appear[s] incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." Evid.R. 601(A). Before a child under the age of ten is permitted to testify, the trial court has a "duty * * * to conduct a voir dire examination of [the] child * * * to determine the child's competency to testify." *State v. Frazier*, 61 Ohio St.3d 247, 250-251, 574 N.E.2d 483 (1991). In making this determination,

> **the trial court must take into consideration (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity and (5) the child's appreciation of his or her responsibility to be truthful.**

*Id*. at 250-251. "Thus, the responsibility of the trial judge is to determine through questioning whether the child of tender years is capable of receiving just impressions of facts and events and to accurately relate them." *Id*. The

determination of a child's competency to testify is left within the discretion of the trial court as the "trial judge has the opportunity to observe the child's appearance, his or her manner of responding to the questions, general demeanor and any indicia of ability to relate the facts accurately and truthfully." *Id.*

Legal Analysis

**{¶8}** On May 31, 2017, the trial court held its first interview of T.B. Competency Hearing Tr. 2. After the interview, the trial court, in its judgment entry, noted that T.B. had difficulty focusing and sitting still. Doc. 60. The trial court permitted a second interview with T.B. at the evidentiary hearing scheduled for June 30, 2017. Evidentiary Hearing Tr. 2. At the second interview, the trial judge asked T.B. a number of questions that addressed the relevant factors for determining competency. The following exchanges from both interviews demonstrate T.B.'s ability to receive accurate impressions of fact, her ability to recollect observations, and her ability to communicate:

> **The Court: Okay. And has anybody touched you in that area that—that shouldn't have?**
>
> **[T.B.]: My daddy did.**
>
> **The Court: Your dad did?**
>
> **[T.B.]: (No audible response).**
>
> **The Court: And where did he do that?**
>
> **[T.B.]: When I was visiting him. We were in an apartment and he did it.**

Competency Hearing Tr. 45.

**The Court:  Okay.  Do you remember talking about your dad touching you with his bump?**

**[T.B.]:  (No audible response).**

**The Court:  What would be his bump?**

**[T.B.]  Where milk comes out of.**

**The Court:  Where milk comes out of?  Where—where is that on his body?**

**[T.B.]:  (No audible response).**

**The Court:  Okay.  And do you remember who you told that to?**

**[T.B.]:  Mom.**

**The Court:  Hmm?**

**[T.B.]:  Mom.**

**The Court:  Your mom?  And did you tell anyone else?**

**[T.B.]:  Amber and Courtney.**

**The Court:  Okay.  And—**

**[T.B.]:  Inaudible.**

**The Court:  —where did he touch you with his bump at?**

**[T.B.]:  Right here.**

**The Court:  Okay.  And you pointed to a place on your body?**

**[T.B.]:  Uh-huh.**

Evidentiary Hearing Tr. 61-62. T.B. also answered questions about what memories she had about her last birthday party and prior visits with Beaver. Evidentiary Hearing Tr. 59-60, 64-65.

{¶9} T.B. was then questioned about her understanding of truth and falsity:

**The Court: Okay. Is it better to tell the truth or a lie?**

**[T.B.]: Better to tell the truth.**

**The Court: Okay. What color is my robe?**

**[T.B.]: Black.**

**The Court: Okay. If I said my robe was red, would that be the truth?**

**[T.B.]: (No audible response).**

**The Court: That would not be? Okay. If I said my robe was black, would that be the truth?**

**[T.B.]: (No audible response).**

**The Court: You're nodding your head yes. Now, what happens if you don't tell the truth?**

**[T.B.]: You accidentally get in trouble.**

**The Court: Okay. And what happens to you if you get caught telling a lie?**

**[T.B.]: I—she makes—my mommy makes me go to my room.**

**The Court: Okay. Now, if you—if you said a friend of yours—do you have friends?**

**[T.B.]: (No audible response).**

> **The Court:  If you said that a friend of yours hit you and the friend didn't really hit you, would—**
>
> **[T.B.]:  That would be a lie.**
>
> **The Court:  —the truth or a lie?**
>
> **[T.B.]:  A lie.**

Evidentiary Hearing Tr. 55-56.  The trial court asked T.B. questions about her responsibility to be truthful:

> **The Court:  Now, did you talk to anyone today about, you know, coming in here to talk with me?**
>
> **[T.B.]:  My mommy said this is very important.**
>
> **The Court:  Okay.  What did she tell you?**
>
> **[T.B.]:  She tell me I got to do this.  '[T.B.], you got to do this.'**
>
> **The Court:  Okay.  What did she tell you you had to do?**
>
> **[T.B.]:  I gotta answer every one of your questions so we can go to a different mart.  We was at Walmart—McDonald's parked and—**
>
> **The Court:  Okay.**
>
> **[T.B.]:  —there was a big slide, and I'm scared.  So I just took deep breaths so I could calm down; and then I decided to go down one of them, and I did it completely.**
>
> **The Court:  And when she told you to answer my questions, do you know if it's important when you answer my questions to tell me what really happened?**
>
> **[T.B.]:  Yes.**
>
> **The Court:  And why would that be important?**

> **[T.B.]: Because if you tell a lie, you're supposed to not keep it. You're supposed to tell it to you if it actually really happens.**
>
> **The Court: Okay. What happens if you tell a lie?**
>
> **[T.B.]: You get in trouble.**

Evidentiary Hearing Tr. 63-64.

{¶10} At the conclusion of T.B.'s second interview at the court, the trial judge stated the following:

> **I mean, I think it's a fairly close question, you know. Her focus isn't very good, but I don't know if focus is the primary issue. I— I mean, it does appear she understands the difference between a truth and a lie. She does tend to understand that she has a responsibility to be truthful, and she did that both today and at the prior voir dire.**
>
> **\* \* \***
>
> **But both when I interviewed her a month ago and interviewed her today, she did recall and was able to relate, you know, what her— she says her father had done to her, and she had—and in a fairly consistent manner and fairly consistent with the interview as well.**

Evidentiary Hearing Tr. 69-70. The record contains evidence that the trial court considered all of the required factors in making this determination. The transcripts of T.B.'s two interviews provide evidence that she was competent to testify. Further, we do not find evidence in the record that indicates that the trial court abused its discretion. Thus, Beaver's first assignment of error is overruled.

*Second Assignment of Error*

**{¶11}** In his second assignment of error, Beaver asserts that the trial court erred by allowing the jury to listen to a recording of T.B. being interviewed by a child abuse specialist. Beaver argues that this video recording was made as part of an investigation, making Evid.R. 803(4) inapplicable.

Legal Standard

**{¶12}** "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay may be admissible if the statement falls within an exception to the general rule prohibiting hearsay statements. Evid.R. 802. Evid.R. 803(4) establishes an exception for statements made for the purpose of medical treatment and reads as follows:

> **Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.**

Evid.R. 803(4). Under this exception, "[t]he salient inquiry is whether the child's statements were made for purposes of diagnosis and treatment rather than for some other purpose." *State v. Gutierrez*, 3d Dist. Hancock No. 5-10-14, 2011-Ohio-3126, ¶ 52. Trial courts

> **'must look to the function of the particular social worker to determine whether or not it was permissible for the social worker to testify concerning statements under Evid.R. 803(4).' 'The trial**

> **court's consideration of the purpose of the child's statements will depend on the facts of the particular case.' 'At a minimum, * * * a nonexhaustive list of considerations includes[:] (1) whether the child was questioned in a leading or suggestive manner; (2) whether a motive to fabricate, such as a custody battle, existed; (3) whether the child understood the need to tell medical personnel the truth; (4) the child's age; and (5) the consistency of the child's declarations.'**

(Citations omitted.) *In re S.L.*, 2016-Ohio-5000, 56 N.E.3d 1026, ¶ 26 (3d Dist.).

"The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), second paragraph of the syllabus. "An appellate court's review of the admission of evidence is limited to a determination as to whether the trial court abused its discretion." *State v. Hawkey*, 2016-Ohio-1292, 62 N.E.3d 721, ¶ 63 (3d Dist.), quoting *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991).

{¶13} Statements admissible under the Ohio Rules of Evidence may still be inadmissible under the Sixth Amendment's Confrontation Clause. *State v. Dever*, 64 Ohio St.3d 401, 415, 596 N.E.2d 436 (1992). The United States Constitution

> **guarantees the right of defendants in criminal cases 'to be confronted with the witnesses against him.' Since a witness is a person who 'bear[s] testimony,' 'the Confrontation Clause applies only to testimonial statements.'**

(Citations omitted.) *State v. Little*, 2016-Ohio-8398, 78 N.E.3d 323, ¶ 17 (3d Dist.). 'Testimony,' in turn, is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" *Crawford v. Washington*, 541 U.S.

36, 51, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), quoting 2 N. Webster, An American Dictionary of the English Language (1828).

{¶14} The Ohio Supreme Court has "adopted the 'objective-witness test' for out-of-court statements made to a person who is not law enforcement." *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 161, citing *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, ¶ 36. Under this test, testimonial statements are those

> **made 'under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' In determining whether a statement is testimonial for Confrontation Clause purposes, courts should focus on the expectation of the declarant at the time of making the statement; the intent of a questioner is relevant only if it could affect a reasonable declarant's expectations.**

*Stahl* at ¶ 36. Statements to persons outside of law enforcement are "much less likely to be testimonial than statements to law enforcement officers." *Ohio v. Clark*, 135 S.Ct. 2173, 2180, 192 L.Ed.2d 306 (2015). Further, "[s]tatements by very young children will rarely, if ever, implicate the Confrontation Clause." *State v. Saltz*, 3d Dist. Hancock No. 5-14-33, 2015-Ohio-3097, ¶ 34, quoting *Clark* at 2182.

{¶15} For testimonial hearsay to be admissible at trial, the witness must be "unavailable to testify, and the defendant [must have] had a prior opportunity for cross-examination." *Crawford* at 54. With nontestimonial hearsay, however, "the States [have] flexibility in the development of hearsay law." *Id*. at 68. "[W]e review de novo evidentiary rulings that implicate the Confrontation Clause." *State v.*

-13-

*McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 97, citing *United States v. Henderson*, 626 F.3d 326, 333 (6th Cir. 2010).

Legal Analysis

**{¶16}** We begin this analysis by determining the admissibility of this video under the Ohio Rules of Evidence. In this case, the CPC interview with T.B. was conducted within two weeks of Kristina taking T.B. to the ARMC for a sexual abuse examination. Trial Tr. 281-282. Kristina sought an appointment with the CPC pursuant to a referral from the ARMC for T.B.'s further medical treatment. Doc. 90. Prior to introduction of the videotape at trial, Muse testified that the purpose of this interview was "[m]edical diagnosis and mental health treatment." Trial Tr. at 283. Kristina was not present for the CPC interview, but Dr. Jetty, a physician, observed T.B. from another room during the interview. *Id*. Muse explained that "the physician will—will observe in the other room so they don't have to ask as in-depth questions as we do." *Id*. After the interview, Dr. Jetty examined T.B., building off of the content of Muse's interview. *Id*. Muse also testified that the purpose of the interview was not to collect information for prosecution. *Id*.

**{¶17}** We turn now to the factors under which the child being interviewed is examined. First, after examining the content of the video, we do not find that T.B. was asked questions in a leading or suggestive manner. Second, T.B. was not aware that the interview was being recorded and did not appear to have a motive to fabricate allegations. Third, T.B. indicated that she understood the importance of

telling the truth in this interview. Fourth, T.B. was almost four at the time of this interview at the CPC. Fifth, the trial court heard allegations against Beaver from T.B. in a competency hearing, an evidentiary hearing, on the video, and at trial. The trial court determined that T.B.'s statements were largely consistent. After reviewing these materials, we do not find evidence in the record indicating that the trial court abused its discretion in reaching this conclusion. For these reasons, we find these statements were given for the purpose of medical treatment and were, therefore, admissible under Evid.R. 803(4).

{¶18} We turn now to the Confrontation Clause analysis. We begin by noting that, as a three-year-old child, T.B. was likely unaware of the workings of our criminal justice system or that her statements could be used subsequently in a trial. Given the expectations of a child her age, T.B.'s statements were not testimonial. For these reasons, we find that the statements in this video were admissible under the Ohio Rules of Evidence and did not run afoul of the Confrontation Clause of the United States Constitution. Thus, Beaver's second assignment of error is overruled.

*Third Assignment of Error*

{¶19} In his third assignment of error, Beaver argues that the trial court erred in denying his motion for a mistrial, which was made in response to allegedly improper comments made by the prosecution during opening arguments.

Legal Standard

**{¶20}** "During opening statements, counsel is accorded latitude and allowed 'fair comment' on the facts to be presented at trial." *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 145. "In these cases, the standard of review 'is [1] whether remarks are improper and, if so, [2] whether they prejudicially affected substantial rights of the accused.'" *State v. Davis*, 3d Dist. Seneca No. 13-16-30, 2017-Ohio-2916, ¶ 17, quoting *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990).

> **An improper comment does not affect a substantial right of the accused if it is clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments. 'To establish prejudice, a defendant must show that a reasonable probability exists that, but for the prosecutor's improper remarks, the result of the proceeding would have been different.'**

(Citations omitted.) *Little*, *supra*, at ¶ 30. "The comments under scrutiny must be examined 'in the context of the entire trial.'" *State v. Thompson*, 2017-Ohio-792, 85 N.E.3d 1108, ¶ 26 (3d Dist.), quoting *State v. Potts*, 2016-Ohio-5555, 69 N.E.3d 1227, ¶ 83 (3d Dist.).

**{¶21}** "Where the defendant has submitted a motion for a new trial in response to an allegedly inappropriate comment * * *, we consider the provisions of Crim.R. 33." *State v. McDowell*, 3d Dist. Hancock No. 5-17-01, 2017-Ohio-9249, ¶ 21. Under Crim.R. 33,

**(A) A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:**

**(1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial;**

Crim.R. 33(A)(1). "Mistrials are necessary 'only when the ends of justice so require and a fair trial is no longer possible.'" *State v. Welch*, 3d Dist. Wyandot No. 16-06-02, 2006-Ohio-6684, ¶ 9, quoting *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, at ¶ 131. "[A] mistrial should not be ordered merely because some error or irregularity had intervened." *State v. Carter*, 3d Dist. Allen No. 1-15-62, 2017-Ohio-1233, ¶ 71. The decision regarding whether to declare a mistrial is left within the discretion of the trial court. *State v. Glover*, 35 Ohio St.3d 18, 517 N.E.2d 900 (1988). Thus, on appeal, a trial court's decision not to declare a mistrial will not be reversed absent an abuse of discretion. *McDowell* at ¶ 22.

Legal Analysis

**{¶22}** On appeal, Beaver alleges that the following comment was improper:

**April 24, 2016, [T.B.], * * * was coming home. You see, on—every other weekend, when Mr. Beaver chose to exercise his right to do so, there would be a visitation. * * *. That day, [T.B.] was carrying her stuff toy Jaden * * * as she was riding in mommy's car, and then she said something. What she said was what a mother never wants to hear, a mother's worst nightmare. Mom immediately drove to the Adena Health Center in Chillicothe.**

Tr. 124-125. Beaver argued that this statement improperly referenced statements made by T.B. to Kristina. We begin by noting that this comment was made during

the State's opening statement. The trial court instructed the jurors that the content of opening arguments was not evidence. Tr. 124.

**{¶23}** Further, while the trial court denied Beaver's motion for a mistrial, the trial court did issue the following curative instruction:

> **During the State's opening statement, there was a reference to the April 22-24, 2016, visitation * * *. There was a reference made to allegations made following that visitation. Just to be clear, we do not anticipate evidence being presented at trial regarding any statements [T.B.] may have made to her mother following the April 22-24 visitation. So you should not draw any inference as to what statements she may or may not have made to her mother following that visitation.**

Tr. 169. "[I]f the trial court issues curative instructions regarding a comment mentioning the silence of the defendant, we presume that the jury adhered to the trial court's instructions." *McDowell* at ¶ 20. The arguments of the Defense on appeal have not given us a reason to dispense with this presumption.

**{¶24}** Even if the prosecutor's remark was improper, we do not see how this one sentence, uttered in the context of a three-day-long proceeding, had a prejudicial impact on Beaver's substantial rights or could, by itself, deprive Beaver of a fair trial. Further, Beaver has not demonstrated how the outcome of his trial would have been different in the absence of this statement. Based on this evidence, we conclude that this verdict would have been the same with or without this comment in the State's opening arguments. For this reason, we find that the trial court did not abuse

its discretion in denying Beaver's motion for a mistrial. Thus, the appellant's third assignment of error is overruled.

*Fourth Assignment of Error*

**{¶25}** In his fourth assignment of error, Beaver points to seven situations in which he alleges his trial counsel proved to be ineffective.

Legal Standard

**{¶26}** Under Ohio law, "a properly licensed attorney is presumed to carry out his duties in a competent manner." *State v. Gee*, 3d Dist. Putnam No. 12-92-9, 1993 WL 270995 (July 22, 1993). Thus, the petitioner has the burden of proving the ineffective assistance of counsel claim. *State v. Mayse*, 88 N.E.3d 1208, 2017-Ohio-1483, ¶ 22 (3d Dist.), quoting *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). Under the test set forth in *Strickland v. Washington*, the petitioner must establish two elements. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). If the petitioner cannot prove one of these elements, "it [is] unnecessary for a court to consider the other prong of the test." *State v. Walker*, 2016-Ohio-3499, 66 N.E.3d 349, ¶ 20 (3d Dist.).

**{¶27}** First, the petitioner must establish that "counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland* at 687. "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of

reasonable representation." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95, citing *Strickland* at 687. "Counsel need not raise meritless issues or even all arguably meritorious issues." *Mayse* at ¶ 24, citing *State v. Jones*, 91 Ohio St.3d 335, 354, 744 N.E.2d 1163 (2001). "Debatable trial tactics do not constitute ineffective assistance of counsel." *State v. McNeill*, 83 Ohio St.3d 438, 449, 700 N.E.2d 596 (1998). Further, "[t]he failure to make objections alone is not enough to sustain a claim of ineffective assistance of counsel." *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 168.

**{¶28}** Second, the petitioner needs to establish "that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland* at 687. "To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Conway* at ¶ 95, citing *Strickland* at 687; *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989). "Appellate courts examine the record to determine "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." *State v. Rodriquez*, 3d Dist. Defiance No. 4-16-16, 2017-Ohio-1318, ¶ 9, quoting *State v. Hester*, 45 Ohio St.2d 71, 341 N.E.2d 304 (1976), paragraph four of the syllabus.

Legal Analysis

**{¶29}** *Failure to Object During Voir Dire*: Beaver claims that his counsel should have objected during voir dire after the prosecutor stated:

> **So a mom—when you hear that term, 'A mom knows her child,' you get what I'm saying? You may not be able to hear that child verbalize it, but you know something. Does anyone not have an understanding of that concept? Does that make sense to you?**

Trial Tr. 60. However, "[f]ew decisions at trial are as subjective or prone to individual attorney strategy as juror voir dire, where decisions are often made on the basis of intangible factors." *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, 873 N.E.2d 828, ¶ 64. Further, Beaver has not demonstrated how this objection would have changed the outcome of his trial.

**{¶30}** *Failure to Object to the Officer Hildreth's Testimony*: Beaver argues that his trial counsel should have objected to Officer Hildreth's statements that indicated he obtained a search warrant as part of his investigation into Beaver's conduct. However, he has not demonstrated how the absence of these statements would have changed the outcome of his trial. *See also Bradley, supra*.

**{¶31}** *Failure to Object to Leading Questions*: Beaver argues that his trial counsel failed to object when the prosecutor asked T.B. leading questions. However, the decision to object falls squarely in the ambit of trial strategy, especially in a situation where the witness was a five-year-old, alleged victim of sexual abuse. *See State v. Jackson*, 92 Ohio St.3d 436, 446, 751 N.E.2d 946 (2001).

{¶32} *Failure to Object to the Admission of an Exhibit*: Beaver argues that his trial counsel should have objected to the admission of the videotape of T.B.'s CPC interview as an exhibit. However, Beaver's trial counsel had already objected to the admission of the videotape before the jury viewed it. The trial court overruled this earlier objection. Beaver has not shown how admission of this video as an exhibit was improper or how an objection would have changed the outcome of the trial. *See State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 231.

{¶33} *Failure to Object to Kristina's Testimony*: Beaver argues that his trial counsel should have objected to Kristina's testimony regarding T.B.'s veracity on the grounds that this asked for speculation and her statement that a lawyer wanted $2,000.00 to represent her on the grounds that this was hearsay. However, Beaver has not even demonstrated that these statements were, respectively, speculative or hearsay. Further, he has not established how an objection to these statements would have changed the outcome of his trial. *See State v. Carruth*, 2d Dist. Montgomery No. 19997, 2004-Ohio-2317, ¶ 40, 50-51; *Conway, supra*, at ¶ 103-105.

{¶34} *Failure to Inquire*: Kristina stated at trial that Beaver undertook an action in 2013 that violated a court order. Trial Tr. 450-452. In fact, Beaver's action was undertaken before the relevant court order was issued in 2015. *Id*. at 463-464. Beaver argues that his trial counsel should have questioned Kristina on this matter. However, Beaver cannot establish that he was prejudiced by his trial counsel's

decision because the trial judge asked a clarifying question that corrected this inaccuracy in the presence of the jury. *Id.*

**{¶35}** *Failure to Object to Prior Bad Acts Evidence*: Beaver argues that his trial counsel failed to object to the videotape of the T.B.'s CPC interview on the grounds that it allegedly contained prior bad acts evidence. On the video, T.B. said that Beaver "tickled her all the time" "in her private area." Ex. 13. However, even if this statement is inadmissible as a prior bad act, Beaver cannot demonstrate how removing this challenged statement from the videotape would have changed the outcome of his trial. Thus, he cannot establish that he was prejudiced.

**{¶36}** On appeal, Beaver points to seven situations in which he alleges his trial counsel's deficient performance prejudiced him. However, he has not demonstrated how different actions by his trial counsel in these situations would have changed the outcome of his trial. Thus, Beaver has not carried the burden of establishing that he was denied his right to the effective assistance of counsel. For this reason, Beaver's fourth assignment of error is overruled.

### Fifth Assignment of Error

**{¶37}** In his fifth assignment of error, Beaver asserts that the trial court erred in denying his Crim.R. 29 motion for acquittal.

### Legal Standard

**{¶38}** Crim.R. 29 reads, in its relevant part, as follows:

**(A) Motion for Judgment of Acquittal. The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.**

Crim.R. 29(A). "An appellate court reviews a denial of a Crim.R. 29 motion for judgment of acquittal using the same standard that is used to review a sufficiency of the evidence claim." *State v. Sullivan*, 3d Dist. Hancock No. 5-17-09, 2017-Ohio-8937, ¶ 38, quoting *State v. Carter*, 72 Ohio St.3d 545, 553, 651 N.E.2d 965 (1995).

{¶39} "A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial." *State v. Brentlinger*, 2017-Ohio-2588, 90 N.E.3d 200, ¶ 21 (3d Dist.), quoting *In re Swift*, 8th Dist. Cuyahoga No. 79610, 2002 WL 451226, *3 (March 21, 2002). "The sufficiency of the evidence analysis addresses the question of whether adequate evidence was produced for the case to be considered by the trier of fact and, thus, whether the evidence was 'legally sufficient to support the verdict * * *.'" *State v. Campbell*, 3d Dist. Allen No. 1-17-23, 2017-Ohio-9251, ¶ 13, quoting *State v. Worthington*, 3d Dist. Hardin No. 6-15-04, 2016-Ohio-530, ¶ 12.

{¶40} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average

mind of the defendant's guilt beyond a reasonable doubt." *State v. Pierce*, 3d Dist. Seneca No. 13-16-36, 2017-Ohio-4223, ¶ 6, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997), fn. 4. "This analysis does not attempt to 'resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact.'" *Davis, supra*, at ¶ 13, quoting *State v. Eckard*, 3d Dist. Marion No. 9-15-45, 2016-Ohio-5174, ¶ 9. Thus, sufficiency of the evidence is a question of law and a "test of adequacy rather than credibility or weight of the evidence." *State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19.

> **The standard for sufficiency of the evidence 'is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.'**

*State v. Brown*, 3d Dist. Hancock No. 5-17-19, 2018-Ohio-899, ¶ 8, quoting *State v. Plott*, 2017-Ohio-38, 80 N.E.3d 1108, ¶ 73 (3d Dist.).

{¶41} To obtain a conviction for gross sexual imposition in violation of R.C. 2907.05(A)(4), the State had to establish that Beaver (1) had sexual contact (2) with a person less than thirteen years of age. R.C. 2907.05(A)(4). To obtain a conviction for rape in violation of R.C. 2907.02(A)(1)(b), the State had to establish that Beaver (1) engaged in sexual conduct (2) with another person who was less than thirteen years of age. R.C. 2907.02(A)(1)(b).

Legal Analysis

**{¶42}** At trial, Brittany Puckett ("Puckett"), a sexual assault nurse examiner testified that she was on duty on April 24, 2016, and examined T.B. for signs of sexual assault. Trial Tr. 139-140. She stated that she observed redness on T.B.'s labia but saw no other visible, physical injuries. *Id*. at 143. Puckett also testified that she collected T.B.'s panties for further analysis. *Id*. at 144. Alex Thiel ("Thiel"), a forensic scientist at BCI, testified that he examined T.B.'s panties for the presence of bodily fluids. *Id*. at 205. Thiel stated that the panties did not contain semen. However, his tests did reveal the presence of amylase in T.B.'s panties. *Id*. at 211. He further testified that amylase is found in high concentrations in saliva; that the panties had not been washed before he tested them; and that the panties were not likely to have gotten this amylase by transfer during the process of laundering clothing. *Id*. at 211-213.

**{¶43}** Detective Nate Hildreth ("Hildreth") testified that he collected a DNA sample from Beaver. *Id*. at 192. The State called Logan Schepeler ("Schepeler"), a forensic scientist at the Ohio Bureau of Criminal Investigation, as a witness. *Id*. at 248. Schepeler testified that he used the sample that Hildreth had taken and compared it to a sample from T.B.'s panties. *Id*. at 259-260, 271, 277. These tests showed that the amylase contained Beaver's DNA. *Id*. Hildreth testified that, after the test results showed a DNA match, he contacted Beaver and that Beaver did not have an explanation for the presence of the amylase on T.B.'s panties. *Id*. at 195.

{¶44} Muse was called to testify at trial and, in the process, the State introduced the videotape of her CPC interview with T.B. *Id*. at 279. During the course of the interview, T.B. stated that Beaver "tickles her all the time * * * in her private area." Ex. 13. Muse then had T.B. show her, on a diagram, what areas Beaver touched. The diagram was marked by Muse and later admitted into evidence. Ex. 14. T.B. also stated that Beaver tickled her with his finger, tongue, and "bump." Ex. 13. When asked by Muse, T.B. identified the body part she referred to as a "bump" on a diagram, pointing to the male genitalia. Ex. 13, 14. She also stated that Beaver moved his bump up and down against her while she was unclothed. Ex. 13. T.B. then said that "water" came out of Beaver's bump and demonstrated with gestures how Beaver moved up and down. Ex. 13.

{¶45} T.B. was then called as a witness at trial. Trial Tr. 313. She testified that she was five years old at the time of the trial, placing her under the age of thirteen at the time of the alleged incident in 2016. *Id*. at 314. T.B. said she understood what a "bad touch" was and demonstrated where and how her father touched her. *Id*. at 315. She testified that Beaver touched her with his "bump." *Id*. at 316. She further testified that Beaver tickled her "[i]n my private parts, on my private parts" while she was at his house. *Id*. at 317. The prosecutor asked T.B., "When daddy tickled you, did you want him to do that?" *Id*. at 318. T.B. replied, "He just kept doing it all by himself." *Id*.

{¶46} Since we do not consider the weight or credibility of this evidence as part of this analysis, the evidence presented by the State at trial provided a legally adequate basis for both convictions. After viewing all of the evidence in a light most favorable to the prosecution, we find that the State provided sufficient evidence to substantiate each of the essential elements these crimes. For these reasons, Beaver's fifth assignment of error is overruled.

*Sixth Assignment of Error*

{¶47} In his sixth assignment of error, Beaver argues that his convictions were against the manifest weight of the evidence. He bases this argument on the alleged inconsistencies in T.B.'s testimony.

Legal Standard

{¶48} "When 'deciding whether a conviction is against the manifest weight of the evidence, an appellate court determines whether the state has appropriately carried its burden of persuasion.'" *Brown, supra*, at ¶ 8, quoting *State v. Blanton*, 121 Ohio App.3d 162, 169, 699 N.E.2d 136 (3d Dist.1997). "Unlike our review of the sufficiency of the evidence, an appellate court's function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict." *Plott, supra*, at ¶ 73. "In a manifest weight analysis, 'the appellate court sits as a 'thirteenth juror' * * *.'" *Davis, supra*, ¶ 17, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

**{¶49}** On appeal, courts "must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Brentlinger*, *supra*, at ¶ 36, quoting *Thompkins* at 387. "A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses." *Sullivan*, *supra*, at ¶ 38, quoting *State v. Coleman*, 3d Dist. Allen No. 1-13-53, 2014-Ohio-5320, ¶ 7. "Only in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *Little*, *supra*, at ¶ 27, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.

Legal Analysis

**{¶50}** In this analysis, we reincorporate the evidence that was presented in the sufficiency analysis above and now turn to considering the credibility and weight of the evidence presented at trial. Much of Beaver's defense involved scrutinizing the reliability of T.B. as a witness. On cross examination, Muse testified that T.B. did identify a body part incorrectly on the diagram, pointing to the female genitalia and referring to it as a "butt." Trial Tr. at 305. Ex. 14. However, Muse noted that T.B. correctly identified the rest of the body parts on the diagram. Trial Tr. at 305-306. Ex. 14. Muse also testified that T.B. initially stated

that Beaver improperly touched her at her "mommy's" house but then stated that the improper touching occurred at her "daddy's" house. Trial Tr. at 307-308.

**{¶51}** During her testimony, T.B. was able to give her address but could not remember her phone number and said that she did not want to tell the prosecutor her last name. Trial Tr. 315. T.B. stated that her mother instructed her to "answer questions, sit here quietly, and not lie." When asked whether her mother told her what to say at trial, T.B. replied, "I don't know." *Id*. She also stated that she was going to tell the truth to the court. *Id*. at 319. She was also able to recollect details about the cards she got for her birthday, which was shortly before trial. *Id*. at 317. On cross examination, she was asked the age of her siblings. *Id*. at 320. In response, she said that her brother was fifty and that her sister was seventy. *Id*. Defense counsel asked T.B. whether the prosecutor told her what to say at trial, she replied, "No. My mommy did." *Id*. at 321.

**{¶52}** The Defense called Beaver to testify. He testified that "there were always problems" with the exchange of T.B. for visitation, especially if he was late to pick up T.B. or drop her off. *Id*. at 405, 408. He also testified about the marital problems and disputes that led to their divorce. *Id*. at 434. He denied the allegations raised against him. *Id*. at 423. He also stated that he was unaware of why the police wanted a DNA sample at the time Hildreth contacted him. *Id*. at 419. He also pointed to the fact that visitation continued until February of 2017 even though the allegations were first made by T.B. to her mother in April of 2016. *Id*. at 421.

**{¶53}** On rebuttal, Kristina testified that T.B. continued to have visitation with Beaver until February 2017—when criminal charges were filed against Beaver—because their divorce decree required visitation to be altered only by judicial modification and because Kristina could not afford the fee her attorney required to change the visitation schedule. *Id*. at 452-453. Ex. 15. She said that she was afraid that she would lose custody of her daughter if she stopped allowing Beaver to have visitation with T.B. in the absence of a modification order. *Id*. Kristina also testified that she did not coach T.B. as to what her trial testimony should be. *Id*. During her testimony, Kristina also admitted that she had been charged with domestic violence after she slapped Beaver across the face. *Id*. at 447-448.

**{¶54}** After considering the evidence on the basis of its weight and credibility, we do not find that the scales moved manifestly against a finding of guilty. On review of the record, we find that the jury could have reasonably concluded from the evidence presented at trial that Beaver was guilty of the charges against him. Further, we do not see any indication that the jury lost its way and returned a verdict against the manifest weight of the evidence. For these reasons, Beaver's sixth assignment of error is overruled.

*Seventh Assignment of Error*

{¶55} In his seventh assignment of error, Beaver asserts that the cumulative effect of the trial court's numerous errors deprived him of a fair trial. He refers to the errors set forth in the prior six assignments of error as grounds to reverse his convictions under the doctrine of cumulative error.

Legal Standard

{¶56} "The constitutional 'guarantee of a fair trial does not mean an error-free or perfect trial * * *.'" *Davis, supra*, at ¶ 44, quoting *City of Columbus v. Forest*, 36 Ohio App.3d 169, 171, 522 N.E.2d 52, (10th Dist.1987). Under the doctrine of cumulative error, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995). "To find cumulative error, a court must first find multiple errors committed at trial and determine that there is a reasonable probability that the outcome below would have been different but for the combination of the harmless errors." *State v. Stober*, 3d Dist. Putnam No. 12-13-13, 2014-Ohio-5629, ¶ 15, quoting *In re J.M.*, 3d. Dist. Putnam No. 12-11-06, 2012-Ohio-1467, ¶ 36.

Legal Analysis

{¶57} Beaver points to his six prior assignments of error as evidence that he was deprived of the opportunity to have a fair trial. However, we have found that

these six prior assignments of error are without merit. Since Beaver has not identified any errors in this appeal, there are no grounds for reversal on the basis of cumulative error. *See State v. Markley*, 3d Dist. Marion No. 9-14-39, 2015-Ohio-1890, ¶ 56. Beaver's seventh assignment of error is overruled.

*Conclusion*

{¶58} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of Marion County Court of Common Pleas is affirmed.

*Judgment Affirmed*

**ZIMMERMAN and SHAW, J.J., concur.**

**/hls**