[Cite as *State v. Norville*, 2018-Ohio-4467.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

CASE NO. 13-18-14

    v.

ROBERT L. NORVILLE, JR.,

**O P I N I O N**

    DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Trial Court No. 17 CR 0206

**Judgment Affirmed**

**Date of Decision: November 5, 2018**

APPEARANCES:

    *W. Alex Smith* **for Appellant**

    *Rebeka Beresh* **for Appellee**

**WILLAMOWKSI, P.J.**

{**¶1**} Defendant-appellant Robert L. Norville, Jr. ("Norville") appeals the judgment of the Seneca County Court of Common Pleas. He alleges that his convictions were against the manifest weight of the evidence and not supported by sufficient evidence. He also alleges that he was denied his right to the effective assistance of counsel. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{**¶2**} On November 14, 2017, Officer Michael Moore ("Officer Moore"), a patrolman with the Tiffin Police Department, was on duty. Tr. 117. He received a report of a burglary and an assault at an area trailer. Tr. 118. When he arrived at the trailer, he encountered Cynthia Chilcutt ("Chilcutt"), who he later described as "angry, scared, upset." Tr. 119. She reported that Norville had broken through the front door of her trailer while his son—Robert Norville III ("Robert")—and Cyle Carter ("Cyle") were with him. Tr. 131. Chilcutt told Officer Moore that these individuals entered her trailer, pushed her out of their way, and rushed into her back bedroom. Tr. 118, 120. Chilcutt further told Officer Moore that Norville assaulted one of her friends, Ed Carter ("Carter"), who was packing some clothes in the back bedroom. Tr. 118, 122. At that time, Officer Moore observed that Chilcutt had a cut on her thigh and that Carter had blood on his lips and red marks on his face. Tr.

118. Officer Moore also spoke with Carter's wife, Britne Carter ("Britne"), who was present at the time of the alleged break-in and assault. Tr. 123.

{¶3} On December 6, 2017, Norville was charged with one count of aggravated burglary in violation of R.C. 2911.11(A)(1), (B); one count of felonious assault in violation of R.C. 2903.11(A)(1), (D)(1)(a); and one count of assault in violation of R.C. 2903.13(A), (C)(1). Doc. 1. On March 6, 2018, the jury found Norville guilty of felonious assault. Doc. 33. The jury found Norville not guilty of aggravated burglary and of assault. Doc. 33. The trial court sentenced Norville on April 13, 2018. Doc. 37. Appellant then filed his notice of appeal on May 3, 2018. Doc. 44. On appeal, appellant raises the following two assignments of error:

### First Assignment of Error

**The jury erred by convicting Mr. Norville of felonious assault against the manifest weight of the evidence and the State failed to introduce sufficient evidence to support the conviction.**

### Second Assignment of Error

**The defendant did not receive effective assistance of counsel as guaranteed by the 6th and 14th Amendments to the United States Constitution and Article 1 Section 10 of the Ohio Constitution.**

*First Assignment of Error*

{¶4} In his first assignment of error, Norville asserts that his conviction was not supported by sufficient evidence and that his conviction was against the manifest weight of the evidence. In particular, Norville argues that the State did not establish the element of "serious physical harm."

Legal Standard for Sufficiency of the Evidence

**{¶5}** A defendant who challenges the sufficiency of the evidence on appeal asserts that the State did not meet its burden of production at trial. *State v. Brentlinger*, 2017-Ohio-2588, 90 N.E.3d 200, ¶ 21 (3d Dist.). If the State did not present legally sufficient evidence at trial, the trier of fact does not have a legal basis for returning a verdict of guilty. *State v. Campbell*, 3d Dist. Allen No. 1-17-23, 2017-Ohio-9251, ¶ 13. This analysis presents a question of law and a test of adequacy. *State v. Barga*, 3d Dist. Shelby No. 17-17-14, 2018-Ohio-2804, ¶ 10. Appellate courts, in this process, do not consider the weight or credibility of the evidence presented at trial. *State v. Walters*, 3d Dist. Defiance No. 4-16-17, 2017-Ohio-793, ¶ 6.

**{¶6}** In this analysis, we do not determine whether the evidence presented is believable but whether the evidence presented—if believed by an average, reasonable juror—is sufficient to support a guilty verdict. *State v. Pierce*, 3d Dist. Seneca No. 13-16-36, 2017-Ohio-4223, ¶ 6. "The standard for sufficiency of the evidence 'is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.'" *State v. Beaver*, 3d Dist. Marion No. 9-17-37, 2018-Ohio-2438, ¶ 40, quoting *State v. Plott*, 2017-Ohio-38, 80 N.E.3d 1108, ¶ 73 (3d Dist.). In this process, appellate courts are to view the

evidence in a light most favorable to the prosecution. *State v. Brown*, 3d Dist. Hancock No. 5-17-19, 2018-Ohio-899, ¶ 8.

{¶7} To obtain a conviction for felonious assault, the State had to establish that Norville (1) knowingly (2) caused serious physical harm to another person. R.C. 2903.11(A)(1). R.C. 2901.01(A)(5) defines "serious physical harm to include the following:

> **(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;**
>
> **(b) Any physical harm that carries a substantial risk of death;**
>
> **(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;**
>
> **(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;**
>
> **(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.**

R.C. 2901.01(A)(5).

Legal Analysis for Sufficiency of the Evidence

{¶8} At trial, Officer Moore testified that Norville admitted to assaulting Carter during a police interview. Tr. 130. Officer Moore also received a copy of the report from Carter's medical examination, which occurred after the alleged assault. Tr. 125. Officer Moore testified that this report indicated that Carter "had

a fractured rib on his left side; he had two fractured ribs on his right side; he had a contusion on his face and to his left hand." Tr. 125. A certified copy of this medical record was admitted into evidence. Ex. 10. Tr. 189-190.

{¶9} Carter then testified that, on November 14, 2017, he was in the back bedroom of Chilcutt's trailer, preparing to do laundry. Tr. 140. Carter said, "I just stood up and [Norville] was there * * *." Tr. 142. Carter testified that Norville was his nephew and that Norville accused him of "kicking the door in at my [Carter's] sister's house, which is his [Norville's] mom * * *." Tr. 142. He then said that Norville "hit me first two or three times I think, and I went to the floor and they— just all three of them * * * just started kicking on me." Tr. 143. Carter testified that he "curled up in a ball on [his] knees" and that he did not retaliate against Norville. Tr. 143. Carter believed the assault lasted about three minutes. Tr. 145.

{¶10} Carter then described his injuries as follows: he had "split lips, punched, knots on my head, three broken ribs. Someone in the mayhem stomped on my one hand." Tr. 144. *State v. Childers*, 4th Dist. Jackson No. 96 CA 785, 1997 WL 334994, *6 (June 11, 1997) (holding that a reasonable jury could have concluded that the fracture of [the victim's] ribs constituted serious physical harm."); *State v. Montgomery*, 8th Dist. Cuyahoga No. 102043, 2015-Ohio-2158, ¶ 14. He also stated that his glasses were broken during the assault. Tr. 144. According to his testimony, Carter sought medical care immediately after this incident, saying "[i]t's kind of hard to breathe with three broken ribs, and I have

liver cancer, and they kicked me dead square in the liver several times." Tr. 146. *Redman, supra*, at ¶ 25, citing *State v. Davis*, 8th Dist. Cuyahoga No. 81170, 2002-Ohio-7068, ¶ 20. *See also State v. Person*, 9th Dist. Summit No. 27600, 2016-Ohio-681, ¶ 11. The State also introduced several pictures of Carter that were taken after the alleged assault. Ex. 7-9. Tr. 145. These pictures showed extensive bruising on Carter's face and side. Ex. 7-9.

{¶11} During his testimony, Carter also read the following from his certified medical records: he had "[r]ib pain, head injury, hand pain, mouth injury; diagnosis, closed fracture multiple ribs of both sides initial encounter, closed head injury, contusions of face, contusions of left hand." Tr. 148. Carter further testified these injuries were "very painful" and that these injuries involved a prolonged recovery. Tr. 148. At the trial, which was three months after the alleged assault, Carter stated that he still had difficulty breathing. Tr. 148. *See State v. Lawson*, 3d Dist. Union No. 14-06-13, 2006-Ohio-5160, ¶ 20-21 (holding that a person was a victim of serious physical harm after suffering from headaches for two months after the assault). Based on this evidence, the jurors could have reasonably found that Carter's injuries constituted "serious physical harm."

{¶12} We find that the testimonies of Officer Moore and Carter, if believed by the jury, provided a legally adequate basis to support Norville's conviction. The State, at trial, produced some evidence for each of the essential elements of the crime of felonious assault. Thus, after viewing all of the evidence in a light most favorable

to the prosecution, we find that Norville's conviction for felonious assault was supported by sufficient evidence.

Legal Standard for Manifest Weight

**{¶13}** A defendant who challenges a conviction as being against the manifest weight of the evidence asserts that the State did not carry its burden of persuasion at trial. *State v. Sullivan*, 2017-Ohio-8937, 102 N.E.3d 86, ¶ 37 (3d Dist.). In a manifest weight analysis, "the appellate court sits as a 'thirteenth juror' * * *." *State v. Davis*, 3d Dist. Seneca No. 13-16-30, 2017-Ohio-2916, ¶ 17, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Appellate courts

> **must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'**

*State v. Randle*, 2018-Ohio-207, 104 N.E.3d 202, ¶ 36 (3d Dist.), quoting *Thompkins* at 387.

**{¶14}** "A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses." *State v. Baker*, 3d Dist. Allen No. 1-17-61, 2018-Ohio-3431, ¶ 38, quoting *State v. Coleman*, 3d Dist. Allen No. 1-13-53, 2014-Ohio-5320, ¶ 7. Determinations as to the credibility of witnesses are primarily matters reserved to the trier of fact. *State v. Gervin*, 2016-Ohio-8399, 79 N.E.3d 59, ¶ 142 (3d Dist.),

quoting *State v. Clark*, 101 Ohio App.3d 389, 409, 655 N.E.2d 795 (8th Dist.1995). "Only in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Little*, 2016-Ohio-8398, 78 N.E.3d 323, ¶ 27 (3d Dist.), quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.

Legal Analysis for Manifest Weight

{¶15} Before we examine the evidence in the record on the basis of its weight and credibility, we reincorporate the relevant evidence presented under the sufficiency analysis. During cross examination, Carter denied going to his sister's property and kicking her door. Tr. 151. He also stated that he did not have drugs on his person at the time of the assault. Tr. 152. Carter admitted that he had a knife in his pocket but testified that he did not take it out during the assault. Tr. 152. Carter further admitted that he had been involved with Constance Norman ("Norman") and that Norman was now in a relationship with Norville. Tr. 159-160. He claimed that he was not irritated by Norville's relationship with Norman. Tr. 160.

{¶16} Chilcutt testified that Carter came to her house with Britne to pick up his clothes after he got out of jail. Tr. 164-165. She then testified that she did not see Norville enter her trailer as she was in the bathroom. Tr. 166. She said that, after Norville entered her trailer, she went into the back bedroom where she saw Norville, Cyle, and Robert kicking Carter. Tr. 166. She attempted to stop the

assault, but one of the three men shoved her up against the bedroom door frame. Tr. 167. She testified that, as a result of being shoved, she had two broken ribs and a number of bruises. Tr.167-168. She said that Norville was in the trailer for about ten minutes. Tr. 168.

{¶17} Britne then testified that she was in the living room while Carter, her husband, was in the back bedroom getting his clothes. Tr. 177, 179. She stated that she did not let Norville into the trailer and that Norville "pushed the door open." Tr. 180. She said that she followed them to the back bedroom where she saw Norville, Cyle, and Robert kicking Carter. Tr. 181. She also testified that Carter was not fighting back and that she was not threatened or injured while Norville, Cyle, and Robert were in the trailer. Tr. 182. On cross examination, she admitted that Carter was seeing Norman while she and her husband were separated. Tr. 187. She also admitted that Carter's relationship with Norman ended when Norman began seeing Norville. Tr. 187. Britne denied setting up the attack. Tr. 187.

{¶18} The Defense then called Norville to testify. Tr. 193. He stated that he was on his way to Toledo with Norman, Cyle, and Robert when he received a call from his mother, who was Carter's sister. Tr. 194. His mother told him that Carter was at her trailer and was kicking the door. Tr. 194. Norville stated that he then went to his mother's trailer but that Carter was gone by the time he arrived. Tr. 194. He testified that there had been "friction" between him and Carter since Norman left Carter. Tr. 194. Norville stated that Chilcutt had orchestrated a drug deal for

him that had been delayed. Tr. 195. Since his mother's trailer was near to Chilcutt's trailer, Norville decided to visit Chilcutt to determine the status of the drug deal and was unaware that Carter was at Chilcutt's trailer. Tr. 195-196. Norville stated that he went to Chilcutt's trailer; that he knocked on the front door; and that Britne let him inside. Tr. 195.

{¶19} Norville stated that he walked towards the back of the trailer to find Chilcutt when he saw Carter doing drugs in the back bedroom. Tr. 196. Norville testified that he was asking why Carter had kicked his mother's door when Carter pulled out a knife. Tr. 196. Norville said that he, in response, hit Carter and then pushed Carter onto the floor. Tr. 196. At this point, Robert came into the room and told Norville to stop. Tr. 197. Norville testified that he started to leave when Carter pulled another knife out. Tr. 197. Norville and Carter then briefly resumed their physical altercation. Tr. 198. He claimed that he would not have hit Carter if Carter had not pulled out a knife. Tr. 203. He also denied shoving Chilcutt. Tr. 217.

{¶20} Norville also testified that Chilcutt and Britne were arguing as he left the trailer. Tr. 198. He said Chilcutt was accusing Britne of orchestrating this altercation as a part of the ongoing friction between Carter and Norville over Norman. Tr. 202. On cross examination, Norville admitted that he had stopped by Carter's trailer on the way to Chilcutt's trailer and that he had a conviction for theft. Tr. 206-207. He denied telling Officer Moore that he went to Chilcutt's trailer for the purpose of beating Carter. Tr. 210.

{¶21} Robert—Norville's son—then testified that Britne let his father into Chilcutt's trailer. Tr. 223. He said that the altercation between Norville and Carter was in progress by the time he reached the back bedroom. Tr. 223. He stated that he stopped his father from fighting Carter and that Carter pulled a knife out at this point. Tr. 223. Robert stated that Norville then "stopped" Carter from using the knife. Tr. 223. On cross examination, he admitted that he had convictions for complicity to commit arson, stealing stolen property, and tampering with evidence. Tr. 225. He also denied telling Officer Moore that Carter's pocket knife was not a "threat" to Norville. Tr. 227.

{¶22} Cyle—Norville's cousin and Carter's nephew—then testified that Britne let Norville into Chilcutt's trailer. Tr. 236, 241. He said that Norville asked Carter why he was at his mother's house. Tr. 243. Cyle testified that Carter then pulled out a knife, prompting an argument between Norville and Carter. Tr. 244. He then stated that Norville and Carter began fighting. Tr. 243. Cyle then tried to separate Carter and Norville. Tr. 244. Cyle testified that Chilcutt then ordered him out of the trailer at which point he left. Tr. 244. On cross examination, Cyle admitted that he had convictions for receiving stolen property, complicity to receiving stolen property, theft, breaking and entering, complicity to breaking and entering, tampering with evidence, and possession of criminal tools. Tr. 246.

{¶23} After reviewing the evidence in the record and considering its weight and credibility, we find that competent, credible evidence exists to substantiate each

of the essential elements of the crime of felonious assault, including the element of serious physical harm. Further, the record does not contain evidence indicating that the jurors lost their way and returned a verdict against the manifest weight of the evidence. Thus, Norville's first assignment of error is overruled.

*Second Assignment of Error*

**{¶24}** In his second assignment of error, Norville argues that he was deprived of the effective assistance of counsel (1) when his trial counsel failed to object after a witness referenced a certified medical report at trial and (2) when his trial counsel failed to subpoena the doctor who treated the alleged victim. We disagree.

Legal Standard

**{¶25}** "Under Ohio law, 'a properly licensed attorney is presumed to carry out his duties in a competent manner.'" *Beaver, supra*, at ¶ 26, quoting *State v. Gee*, 3d Dist. Putnam No. 12-92-9, 1993 WL 270995 (July 22, 1993). "In order to prove an ineffective assistance of counsel claim, the appellant must carry the burden of establishing (1) that his or her counsel's performance was deficient and (2) that this deficient performance prejudiced the defendant." *In re C.N.*, 3d Dist. Hardin Nos. 6-17-16 and 6-17-23, 2018-Ohio-2442, ¶ 16, quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). If the petitioner cannot prove one of these elements, "it [is] unnecessary for a court to consider the other prong of the test." *State v. Walker*, 2016-Ohio-3499, 66 N.E.3d 349, ¶ 20 (3d Dist.).

**{¶26}** First, the petitioner must establish that "counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland* at 687. "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95. "Counsel need not raise meritless issues or even all arguably meritorious issues." *Mayse* at ¶ 24. "[T]he failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel." *Conway* at ¶ 103.

**{¶27}** Second, the petitioner needs to establish "that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland* at 687. "To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Conway* at ¶ 95. Appellate courts must determine from the record "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." *State v. Howton*, 3d Dist. Allen No. 1-16-35, 2017-Ohio-4349, ¶ 35, quoting *State v. Hester*, 45 Ohio St.2d 71, 341 N.E.2d 304 (1976), paragraph four of the syllabus.

Legal Analysis

**{¶28}** *Failure to Object*: Norville argues that his trial counsel failed to object after Officer Moore referenced a certified medical report as the basis for his knowledge of Carter's injuries. Tr. 125. *See Conway, supra*, at ¶ 103. This certified medical report was subsequently admitted into evidence as an exhibit. Tr. 190. Norville asserts that this report was inadmissible hearsay. However, Carter, during his testimony, discussed his injuries, reciting the exact same injuries as Officer Moore listed. Tr. 144. Thus, the same information was introduced through a different witness who had personal knowledge. For this reason, we need not consider the admissibility of this certified medical report: since the exact same information was introduced through another witness, Norville cannot demonstrate how an objection to Officer Moore's testimony would have changed the outcome of this trial.

**{¶29}** *Failure to Subpoena*: Norville argues that the Defense's decision not to subpoena the doctor who examined Carter as a witness constituted ineffective assistance of counsel. We begin our analysis by noting that the decision to call witnesses is a matter of trial strategy. *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 222. Norville has not demonstrated how this tactical decision was unreasonable. Further, Norville has not demonstrated how the outcome of his trial would have been different if Carter's treating physician had

-15-

been called as a witness. For these reasons, Norville's second assignment of error is overruled.

*Conclusion*

**{¶30}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of Seneca County Court of Common Pleas is affirmed.

**Judgment Affirmed**

**ZIMMERMAN and PRESTON, J.J., concur.**

**/hls**