[Cite as *State v. Boedicker*, 2022-Ohio-2992.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                 CASE NO.  1-22-03

      v.

TIMOTHY E. BOEDICKER,              O P I N I O N

      DEFENDANT-APPELLANT.

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                 CASE NO.  1-22-04

      v.

TIMOTHY E. BOEDICKER,              O P I N I O N

      DEFENDANT-APPELLANT.

**Appeals from Allen County Common Pleas Court**
**Trial Court Nos.  CR2020 0191 and CR2021 0054**

**Judgment Affirmed in Case No. 1-22-04;**
**Appeal Dismissed in Case No. 1-22-03**

**Date of Decision:   August 29, 2022**

APPEARANCES:

    *Chima R. Ekeh* for Appellant

    *Jana E. Emerick* for Appellee

**MILLER, J.**

{¶1} Defendant-appellant, Timothy E. Boedicker, appeals the January 6, 2022 judgment of sentence of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.

## I. Facts & Procedural History

{¶2} This case involves Boedicker's sexual abuse of S.O., the daughter of his live-in partner. At the time of the offenses, S.O. was thirteen years old or younger.

{¶3} On September 17, 2020, the Allen County Grand Jury indicted Boedicker in case number CR2020 0191 on 14 counts of rape in violation of R.C. 2907.02(A)(1)(b), first-degree felonies, and 14 counts of sexual battery in violation of R.C. 2907.03(A)(5), second-degree felonies. On September 24, 2020, Boedicker pleaded not guilty to the counts of this indictment.

{¶4} On February 11, 2021, the Allen County Grand Jury separately indicted Boedicker in case number CR2021 0054 on Count One of rape in violation of R.C. 2907.02(A)(1)(b), a first-degree felony, Counts Two and Four of rape in violation of R.C. 2907.02(A)(2), first-degree felonies, and Counts Three and Five of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A), third-degree felonies. On February 19, 2021, Boedicker appeared for arraignment and pleaded not guilty to the counts of this indictment.

{¶5} On December 22, 2021, the State filed motions to consolidate the two cases for purposes of trial. The trial court subsequently granted the State's motions and joined the two indictments for trial.

{¶6} On December 28, 2021, Boedicker appeared before the trial court and waived his right to a jury trial. Thereafter, the cases proceeded to a bench trial on January 3, 2022. At the start of trial, the State moved to dismiss many of the counts of the indictment in case number CR2020 0191. The trial court granted the State's motion and dismissed all but six counts of the indictment. Following the trial court's dismissal, only Counts One through Three alleging rape and Counts Fifteen through Seventeen alleging sexual battery remained in case number CR2020 0191.

{¶7} On January 4, 2022, the trial court found Boedicker guilty of all the remaining counts of the indictment in case number CR2020 0191 and of all the counts of the indictment in case number CR2021 0054. The trial court proceeded immediately to sentencing. At sentencing, the trial court determined that Counts One and Fifteen, Counts Two and Sixteen, and Counts Three and Seventeen of the indictment in case number CR2020 0191 merged for purposes of sentencing. The State elected to have the trial court sentence Boedicker on Counts One, Two, and Three. In addition, the trial court determined that Counts Two and Three and Counts Four and Five of the indictment in case number CR2021 0054 merged for purposes

of sentencing. The State elected to have the trial court sentence Boedicker on Counts Two and Four. The trial court then sentenced Boedicker as follows:

- 10 years to life in prison on Count One in case number CR2020 0191

- 10 years to life in prison on Count Two in case number CR2020 0191

- 10 years to life in prison on Count Three in case number CR2020 0191

- 10 years to life in prison on Count One in case number CR2021 0054

- 6-9 years in prison on Count Two in case number CR2021 0054; and

- 6 years in prison on Count Four in case number CR2021 0054.

The trial court ordered that the sentences for Counts One and Two in case number CR2020 0191 be served concurrently with one another but consecutively to the sentence for Count Three in that case. With respect to the sentences in case number CR2021 0054, the trial court ordered that the sentences for Counts One, Two, and Four be served consecutively to one another. Finally, the trial court ordered that the sentences in case number CR2020 0191 be served consecutively to the sentences in case number CR2021 0054, resulting in an aggregate minimum sentence of 42 years to life in prison and an aggregate maximum sentence of 45 years to life in prison.

## II. Assignments of Error

{¶8} On January 26, 2022, Boedicker timely filed notices of appeal in both case number CR2020 0191 and in case number CR2021 0054. Boedicker's appeal in case number CR2020 0191 was assigned appellate case number 1-22-03, and

Boedicker's appeal in case number CR2021 0054 was assigned appellate case number 1-22-04. The appeals were subsequently consolidated for briefing and argument. He raises the following two assignments of error for our review:

> **1. Appellant's convictions for rape under R.C. 2907.02(A)(2) on Count Two and Four of case number CR2021 0054 were based upon insufficient evidence of the element of "force" or "threat of force."**
>
> **2. R.C. 2967.271 (the Reagan Tokes Law) violates the right to due process under the Fourteenth Amendment of the United States Constitution and Article I, Section 16, of the Ohio Constitution.**

### III. Discussion

**A. First Assignment of Error: Does sufficient evidence support Boedicker's convictions for rape in violation of R.C. 2907.02(A)(2)?**

{¶9} In his first assignment of error, Boedicker argues that the State did not present sufficient evidence to support his convictions for rape as charged in Counts Two and Four of the indictment in case number CR2021 0054. Under these two counts, Boedicker was charged with committing the offense of rape against S.O. in violation of R.C. 2907.02(A)(2).

{¶10} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional*

*amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Consequently, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33.

{¶11} The offense of rape is codified at R.C. 2907.02, which provides in relevant part that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.02(A)(2). Boedicker does not dispute that the evidence is sufficient to establish that he engaged in sexual conduct with S.O. Instead, Boedicker maintains that the evidence is insufficient to demonstrate that he purposely compelled S.O. to submit to the sexual conduct by force or threat of force, as is required to sustain a conviction under R.C. 2907.02(A)(2).

{¶12} Two definitions are relevant to Boedicker's argument. First, "[a] person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the

offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). Second, "force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1).

{¶13} "A defendant purposely compels another to submit to sexual conduct by force or threat of force if the defendant uses physical force against that person, or creates the belief that physical force will be used if the victim does not submit." *State v. Schaim*, 65 Ohio St.3d 51 (1992), paragraph one of the syllabus. "Ohio Supreme Court case law demonstrates that the type and amount of force necessary to purposefully compel a victim to submit 'by force or threat of force' depends upon the victim and offender's relationship." *State v. Wine*, 3d Dist. Auglaize No. 2-12-01, 2012-Ohio-2837, ¶ 41. "The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other." *State v. Eskridge*, 38 Ohio St.3d 56 (1988), paragraph one of the syllabus. Where the victim is a child and the offender is a person in a position of authority over the child, such as a parent or stepparent, "the same degree of force and violence may not be required * * * as would be required were the parties more nearly equal in age, size and strength." *Id.*; *State v. Dye*, 82 Ohio St.3d 323 (1998), syllabus. Moreover, the force applied against the child "'need not be overt and physically brutal, but can be subtle and psychological.'" *Eskridge* at 58, quoting *State v. Fowler*, 27 Ohio App.3d 149, 154 (8th Dist.1985). "'As long as it can be

shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established.'" *Id.* at 59, quoting *Fowler* at 154.

{¶14} Boedicker concedes both that S.O. was 13 years old at the time of the offenses and that, as the live-in partner of S.O.'s mother, he stood in a position of authority over S.O. However, Boedicker argues that, even considering S.O.'s youthful age and the influence he had over S.O., the evidence does not show that he applied sufficient force against S.O. to overcome her will. Boedicker is incorrect.

{¶15} At trial, S.O. testified concerning numerous incidents of sexual abuse perpetrated against her by Boedicker. These incidents began in 2018 when S.O. was approximately 10 years old and culminated in 2020 when she was 13 years old. In May 2020, S.O., her mother, her siblings, and Boedicker moved to a house in Delphos. (Jan. 3-4, 2022 Tr. at 38). S.O.'s mother secured a job at a local restaurant and was often away from the home working. (Jan. 3-4, 2022 Tr. at 40). S.O. stated that Boedicker would remain home with her and her siblings while their mother was at work and that Boedicker was empowered to discipline her and her siblings during those times. (Jan. 3-4, 2022 Tr. at 41).

{¶16} According to S.O., several weeks after moving into the house in Delphos, her mother was away from the home when Boedicker called her into his bedroom and said he wanted to talk to her. (Jan. 3-4, 2022 Tr. at 43). S.O. testified that Boedicker then "used his full body," by which S.O. meant that Boedicker

inserted his penis into her vagina. (Jan. 3-4, 2022 Tr. at 43). This caused S.O. pain. (Jan. 3-4, 2022 Tr. at 43). S.O. testified that she told Boedicker to get off her but that he did not stop. (Jan. 3-4, 2022 Tr. at 44). S.O. also testified that she was wearing clothes when she first entered Boedicker's bedroom, but that Boedicker removed her clothes during the incident. (Jan. 3-4, 2022 Tr. at 44).

{¶17} In addition, S.O. stated that Boedicker inserted his penis into her mouth on a different occasion. (Jan. 3-4, 2022 Tr. at 45). In describing how Boedicker put his penis into her mouth, S.O. testified, "He shoved it in there. He shoved my head down." (Jan. 3-4, 2022 Tr. at 46). S.O. further stated "[Boedicker] had like told [her] to put it in his [sic] mouth" and that he asked her "how did that taste." (Jan. 3-4, 2022 Tr. at 45).

{¶18} S.O. testified that these incidents would begin with Boedicker ordering her to come into the bedroom and sit on the bed. (Jan. 3-4, 2022 Tr. at 63). She stated that Boedicker would tell her to relax and then begin assaulting her. (Jan. 3-4, 2022 Tr. at 63). S.O. said that she would tell Boedicker to stop but that he would not listen. (Jan. 3-4, 2022 Tr. at 63). Furthermore, S.O. testified that while they were living in Delphos, Boedicker told her to take her mother's birth control. (Jan. 3-4, 2022 Tr. at 47). According to S.O., Boedicker had her take birth control "almost every day." (Jan. 3-4, 2022 Tr. at 47-48).

{¶19} Given S.O.'s youthful age and the relationship and power dynamics existing between S.O. and Boedicker, evidence of even minimal physical or psychological force applied by Boedicker against S.O. would be sufficient to satisfy the "force" element of R.C. 2907.02(A)(2). Such evidence is present in this case.

{¶20} S.O.'s statements about the first incident—specifically that Boedicker removed her clothing, that Boedicker was on top of her, and that Boedicker rejected her pleas to stop—are sufficient to prove that Boedicker purposely compelled S.O. to submit to vaginal intercourse by force. *Compare State v. Bush*, 4th Dist. Ross No. 09CA3112, 2009-Ohio-6697, ¶ 4, 31 ("Force was established when the [minor] victim stated that [the defendant, the victim's uncle,] laid on top of her, applied his weight, and engaged in intercourse in spite of her request to stop. This clearly demonstrates 'physical constraint' * * *."); *State v. Shannon*, 11th Dist. Lake Nos. 2002-L-007 and 2002-L-008, 2004-Ohio-1669, ¶ 84-95 (finding sufficient evidence of force where the 25-year-old defendant pushed down the 15-year-old victim's pants, "physically constrained [her] by laying on top of her," and "continued to remain on top of her after she expressed her disinterest" and lack of consent); *see State v. Roberson*, 6th Dist. Lucas No. L-16-1131, 2017-Ohio-4339, ¶ 67 ("Courts have found sufficient force to support a conviction under R.C. 2907.02(A)(2) when defendants engaged in combinations of minimal physical force (e.g., pushing and pulling), removing the victim's clothing, and laying on top of the victim after the

victim expressed disinterest in or discomfort with the sexual contact.").  Similarly, S.O.'s testimony that Boedicker told her to put his penis into her mouth and that he shoved her head down to accomplish the act was sufficient evidence that Boedicker used force to purposely compel S.O. to perform fellatio.  *Compare State v. Frazier*, 8th Dist. Cuyahoga No. 107680, 2019-Ohio-2739, ¶ 14-17, 42 (testimony from victim, aged 13 at the time of the assault, that her then 36-year-old uncle "pushed her head down with his hands until she got on her knees was sufficient to show force"); *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 27-28 (30-year-old defendant's placement of his hands on the 13-year-old victim's head during the act of fellatio was a "physical constraint" sufficient to prove that the defendant used force); *State v. Ball*, 4th Dist. Hocking No. 07CA2, 2008-Ohio-337, ¶ 27 (holding that the jury could have reasonably concluded that the defendant had sexual contact with the victim through the use of force "when he pushed her head down to his penis causing his penis to touch her mouth"); *In re N.K.*, 8th Dist. Cuyahoga No. 82332, 2003-Ohio-7059, ¶ 17 (10-year-old's act of pushing 5-year-old's head down to perform oral sex act, coupled with threats of ostracism, were sufficient to prove forced sexual conduct).

{¶21} Accordingly, viewing the evidence in a light most favorable to the State, a reasonable finder of fact could conclude beyond a reasonable doubt that, on two separate occasions, Boedicker purposely compelled S.O. to submit to sexual

conduct by force. Therefore, we conclude that sufficient evidence supports Boedicker's two convictions for rape in violation of R.C. 2907.02(A)(2).

**{¶22}** Boedicker's first assignment of error is overruled.

**B. Second Assignment of Error: Is Boedicker's 6-9 year prison sentence for rape contrary to law?**

**{¶23}** In his second assignment of error, Boedicker argues that his indefinite 6-9 year prison sentence for rape is contrary to law because the indefinite-sentencing provisions of the Reagan Tokes Law are unconstitutional. Specifically, Boedicker claims that these provisions violate his right to due process.

**{¶24}** Under R.C. 2953.08(G)(2), an appellate court may reverse a sentence "only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. Clear and convincing evidence is that "'which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.* at ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

**{¶25}** Boedicker argues that his sentence is contrary to law because the indefinite-sentencing provisions of the Reagan Tokes Law, under which he was sentenced, infringe on his right to due process. At the outset, we note that Boedicker failed to object to the constitutionality of the Reagan Tokes Law in the trial court.

"The '[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal.'" *State v. Barnhart*, 3d Dist. Putnam No. 12-20-08, 2021-Ohio-2874, ¶ 7, quoting *State v. Awan*, 22 Ohio St.3d 120 (1986), syllabus. "However, we retain the discretion to consider a waived constitutional argument under a plain-error analysis." *Id.* at ¶ 8. In this case, we elect to exercise our discretion to review Boedicker's constitutional arguments for plain error. *See id.* at ¶ 8, 15 (reviewing "waived" challenge to the constitutionality of the Reagan Tokes Law for plain error).

{¶26} Boedicker's challenge does not present a matter of first impression in this court. Since the indefinite-sentencing provisions of the Reagan Tokes Law went into effect in March 2019, we have repeatedly been asked to address the constitutionality of these provisions. We have invariably concluded that the indefinite-sentencing provisions of the Reagan Tokes Law do not infringe on defendants' due-process rights. *E.g.*, *State v. Crawford*, 3d Dist. Henry No. 7-20-05, 2021-Ohio-547, ¶ 11; *State v. Wolfe*, 3d Dist. Union No. 14-21-16, 2022-Ohio-96, ¶ 21.

{¶27} In this case, Boedicker asks us to reconsider our earlier decisions. In recent months, a number of defendants have requested the same of us—requests that

-13-

we have uniformly rejected. *E.g.*, *State v. Abston*, 3d Dist. Henry No. 7-21-04, 2022-Ohio-884, ¶ 33; *Wolfe* at ¶ 22; *Barnhart* at ¶ 12-15; *State v. Mitchell*, 3d Dist. Allen No. 1-21-02, 2021-Ohio-2802, ¶ 17; *State v. Rodriguez*, 3d Dist. Seneca No. 13-20-07, 2021-Ohio-2295, ¶ 15. As Boedicker has not presented us with any compelling reason to depart from our earlier precedent on due-process challenges to the indefinite-sentencing provisions of the Reagan Tokes Law, we once again decline to do so.

{¶28} In sum, we conclude that the indefiniteness of Boedicker's 6-9 year prison sentence for rape does not render his sentence contrary to law. Therefore, Boedicker's second assignment of error is overruled.

## C. Appellate Case Number 1-22-03 - The Appeal in Case Number CR2020 0191

{¶29} In his appellate brief, Boedicker assigns error only with respect to case number CR2021 0054. None of Boedicker's arguments on appeal relate to his convictions and sentences in case number CR2020 0191. App.R. 16 requires that the appellant's brief contain "[a] statement of the assignments of error presented for review" as well as "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions." App.R. 16(A)(3), (7). Here, Boedicker's brief does not contain a statement of the assignments of error specific to case number CR2020 0191 or any argument alleging error in case number CR2020 0191. Therefore, appellate case

number 1-22-03, Boedicker's appeal from the trial court's judgment in case number CR2020 0191, is dismissed. *See State v. McKnight*, 10th Dist. Franklin Nos. 17AP-778 and 17AP-780, 2018-Ohio-1916, ¶ 12, fn. 1, citing App.R. 12 and App.R. 16(A); *State v. Kilgour*, 3d Dist. Marion Nos. 9-16-04 and 9-16-05, 2016-Ohio-7261, ¶ 2.

### IV. Conclusion

**{¶30}** For the foregoing reasons, Boedicker's assignments of error are overruled. Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the Allen County Court of Common Pleas in case number CR2021 0054, appellate case number 1-22-04. The appeal in case number CR2020 0191, appellate case number 1-22-03, is dismissed.

*Judgment Affirmed in Case No. 1-22-04;*
*Appeal Dismissed in Case No. 1-22-03*

**ZIMMERMAN, P.J. and SHAW, J., concur.**

**/jlr**