[Cite as *State v. Risner*, 2022-Ohio-3877.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HARDIN COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,           CASE NO.  6-21-12

     v.

GREGORY LEE RISNER,             O P I N I O N

     DEFENDANT-APPELLANT.

---

STATE OF OHIO,

     PLAINTIFF-APPELLEE,           CASE NO.  6-21-13

     v.

GREGORY LEE RISNER,             O P I N I O N

     DEFENDANT-APPELLANT.

---

**Appeals from Hardin County Common Pleas Court**
**Trial Court Nos.  CRI 20202053 and CRI 20212080**

**Appeal Dismissed in Case No. 6-21-12 and**
**Judgment Affirmed in Case No. 6-21-13**

**Date of Decision:   October 31, 2022**

---

APPEARANCES:

     *Michael B. Kelley* **for Appellant**

     *Andrew R. Tudor*  **for Appellee**

**MILLER, J.**

{¶1} Defendant-appellant, Gregory L. Risner, appeals the November 4, 2021 judgment of sentence of the Hardin County Court of Common Pleas. For the reasons that follow, we affirm.

*Facts & Procedural History*

{¶2} On June 16, 2021, the Hardin County Grand Jury indicted Risner in case number CRI 20212080 on 17 counts: Counts One, Four, Five, Six, Eight, Ten, Twelve, Fourteen, Fifteen, Sixteen, and Seventeen of violating a protection order in violation of R.C. 2919.27(A)(1), (B)(3)(a), fifth-degree felonies; Counts Three, Nine, and Thirteen of violating a protection order in violation of R.C. 2919.27(A)(1), (B)(4), third-degree felonies; and Counts Two, Seven, and Eleven of identity fraud in violation of R.C. 2913.49(B)(1), fifth-degree felonies.

{¶3} At his initial appearance on June 22, 2021, the trial court appointed trial counsel for Risner. On June 29, 2021, Risner pleaded not guilty to the counts of the indictment.

{¶4} A jury trial was held on October 14-15, 2021. On October 15, 2021, the trial court found Risner guilty of all 17 counts. The trial court accepted the jury's verdicts and found Risner guilty. The trial court filed its judgment entry of conviction on October 20, 2021.

{¶5} At the sentencing hearing held on November 1, 2021, the trial court determined that Counts Two, Three, and Four; Counts Seven, Eight, and Nine; Counts Ten, Eleven, and Twelve; and Counts Fourteen, Fifteen, Sixteen, and Seventeen were allied offenses of similar import. The State opted for the trial court to sentence Risner on Count Three, Count Nine, Count Ten, and Count Seventeen, respectively. The trial court sentenced Risner to the following terms of imprisonment: 8 months on Count One, 12 months on Count Three, 8 Months on Count Five, 8 months on Count Six, 12 months on Count Nine, 8 months on Count Ten, 12 months on Count Thirteen, and 8 months on Count Seventeen. The trial court ordered the prison terms for all the counts to run consecutively to each other for a non-mandatory aggregate prison term of 76 months. The trial court further ordered the 76-month prison term in case number CRI 20212080 to run consecutively to the 41-month prison term imposed in Hardin County Common Pleas Case number CRI 20202053, for an aggregate term of 117 months in prison. The trial court filed its judgment entry of conviction on November 4, 2021.

{¶6} Risner filed his notice of appeal on November 5, 2021. He raises two assignments of error for our review.

**Assignment of Error No. I**

**Appellant's conviction was against the manifest weight of the evidence and the evidence was insufficient to support a conviction.**

-3-

{¶7} In his first assignment of error, Risner argues the evidence supporting his convictions was insufficient and that his convictions are against the manifest weight of the evidence.

*Standards for Sufficiency-of-the-Evidence and Manifest-Weight Review*

{¶8} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). Accordingly, we address each legal concept individually.[1]

{¶9} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Consequently, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of

---

[1] In his appellate brief, Risner combines his sufficiency-of-evidence and manifest-weight arguments. However, after reviewing his arguments in light of the record, we elect to address his claims separately.

fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33.

{¶10} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

*Risner's Offenses*

{¶11} As an initial matter, to the extent Risner challenges the sufficiency and weight of the evidence supporting the jury's findings of guilt as to Counts Two, Four, Seven, Eight, Eleven, Twelve, Fourteen, Fifteen, and Sixteen, we need not

address those arguments. *See State v. Sheldon*, 3d Dist. Hardin No. 6-18-07, 2019-Ohio-4123, ¶ 11, citing *State v. Turner*, 2d Dist. Clark No. 2017-CA-78, 2019-Ohio-144, ¶ 22. R.C. 2941.25 provides that "[w]here the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one." Indeed, the Supreme Court of Ohio has explicitly stated that a 'conviction' requires both a finding of guilt and a sentence." *State v. Miller*, 3d Dist. Logan No. 8-19-02, 2019-Ohio-4121, ¶ 12. "Specifically, '[w]hen counts in an indictment are allied offenses, and there is sufficient evidence to support the offense on which the state elects to have the defendant sentenced, the appellate court need not consider the sufficiency [or weight] of the evidence on the count that is subject to merger because any error would be harmless' beyond a reasonable doubt." *Sheldon* at ¶ 11, quoting *State v. Ramos*, 8th Dist. Cuyahoga No. 103596, 2016-Ohio-7685, ¶ 14. Here, error, if any, with respect to the sufficiency or weight of the evidence as to Risner's charges under Counts Two, Four, Seven, Eight, Eleven, Twelve, Fourteen, Fifteen, and Sixteen is harmless beyond a reasonable doubt because those counts were merged with other counts. *See State v. Powell*, 49 Ohio St.3d 255, 263 (1990), *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89, 102

(1997), fn. 4. Accordingly, our analysis will focus only on the counts for which Risner was convicted and sentenced.

{¶12} R.C. 2919.27(A)(1) provides that "[n]o person shall recklessly violate the terms of * * * [a] protection order issued or consent agreement approved pursuant to R.C. 2919.26 or 3113.31 of the Revised Code." R.C. 2901.22(C) provides that "[a] person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." "A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." R.C. 2901.22(C).

{¶13} R.C. 2919.27(B)(3)(a), which relates to Counts One, Five, Six, Ten, and Seventeen, provides that "[v]iolating a protection order is a felony of the fifth degree if the offender previously has been convicted of, pleaded guilty to, or been adjudicated a delinquent child for * * * [a] violation of a protection order issued or a consent agreement approved pursuant to section 2151.34, 2903.213, 2903.214, 2919.26, or 3113.31 of the Revised Code." The parties stipulated that Risner previously violated a protection order pursuant to the statute. (Oct. 14-15, 2021 Tr. at 577-578).

{¶14} R.C. 2919.27(B)(4), which corresponds to Counts Three, Nine, and Thirteen, provides, "If the offender violates a protection order or consent agreement while committing a felony offense, violating a protection order is a felony of the third degree." Specifically, the counts reference identity fraud, which the parties stipulated is a felony offense. (Oct. 14-15, 2021 Tr. at 580).

{¶15} R.R., the victim of the offenses and Risner's ex-wife, testified at the trial. (Oct. 14-15, 2021 Tr. at 82-84). R.R. stated that she and Risner started living apart in April 2019, around the time that R.R. filed for divorce from Risner.[2] (*Id.* at 83). On June 12, 2019, the Hardin County Common Pleas Court granted R.R. a domestic violence civil protection order ("CPO") against Risner pursuant to R.C. 3113.31. (*Id.* at 85-89); (State's Ex. 1). The CPO ordered Risner to stay 500 feet away from R.R. at all times and ordered Risner not to have any direct or indirect contact with R.R. for a period of one year. (State's Ex. 1). The CPO also granted R.R. the exclusive use of 59 Grape Street in Kenton, Ohio. (State's Ex. 1); (Oct. 14-15, 2021 Tr. at 89-90). On August 26, 2019, the Hardin County Court of Common Pleas issued an amendment to the CPO issued on June 12, 2019, to allow Risner to the attend the athletic events of Risner and R.R.'s sons under certain conditions. (State's Ex. 2); (Oct. 14-15, 2021 Tr. at 85-86). All other provisions of the June 12, 2019 protection order remained in effect and the CPO was effective

---

[2] Risner and R.R.'s divorce was finalized in July 2021. (Oct. 14-15, 2021 Tr. at 83).

through August 26, 2020.  (State's Ex. 2).  On June 2, 2020, the trial court issued a judgment entry extending the terms of CPO issued on August 26, 2019 through June 2, 2022.  (State's Ex. 3); (Oct. 14-15, 2021 Tr. at 86-91).

{¶16} On August 12, 2019, R.R. received a message through Facebook Messenger from C.R., a man who stated that he was chatting with her on FetLife, a sexually-oriented social-networking website that caters to fetish interests.  (State's Ex. 61); (Oct. 14-15, 2021 Tr. at 92-108).  R.R. informed C.R. that she did not have a profile on FetLife and that he was likely speaking to her ex-husband.  (State's Ex. 61).  C.R. sent R.R. screenshots of a FetLife profile for a user called "b[***]lovehoe" which included numerous nude and sexually-explicit photographs of R.R.  (State's Ex. 61); (Oct. 14-15, 2021 Tr. at 95-96).  R.R. then requested that C.R. cease contacting her.  (State's Ex. 61).  Despite R.R.'s request, on December 11, 2020, C.R. messaged R.R. again to inform her that "[her] ex" was still posting her images on FetLife and messaging C.R. on the website.  (State's Ex. 61); (Oct. 14-15, 2021 Tr. at 108-111).  R.R. testified that C.R.'s messages made her feel embarrassed, frustrated, angry, harassed, and hurt. (Oct. 14-15, 2021 Tr. at 111).  R.R. stated that she has never visited FetLife and has never had a profile on that platform.  (Oct. 14-15, 2021 Tr. at 94-96).  Furthermore, she denied giving anyone permission to use her name or image on the website.  (*Id.* at 96).

**{¶17}** State's Exhibit 27 is a printout out of the FetLife profile for the user "b[***]lovehoe" and includes approximately 56 pictures. (*Id.* at 96-97). R.R. identified some of the images posted on the FetLife profile as intimate photographs of herself that Risner took in approximately 2008 or 2009, during the course of their marriage. (*Id.* at 100-101); (State's Ex. 27). Also included on the "b[***]lovehoe" profile were photographs that that were not of R.R. and photographs of R.R.'s face superimposed on the body of another woman engaging in sexual intercourse with an unknown male. (State's Exs. 27, 28); (Oct. 14-15, 2021 Tr. at 104-107, 112). Additionally, the FetLife profile contained personal information including R.R.'s name, age, gender, and city. (State's Ex. 27); (Oct. 14-15, 2021 Tr. at 98-99). R.R. again confirmed that she did not create the profile on FetLife and did not give anyone permission to create the profile or use her photographs or personal information on the website. (Oct. 14-15, 2021 Tr. at 98-99).

**{¶18}** On November 25, 2020, R.R. informed law enforcement that she had been receiving text messages from various unknown numbers. (*Id.* at 119); (State's Ex. 6). R.R. identified State's Exhibit 7 as a printout of the aforementioned messages that she provided to law enforcement. (Oct. 14-15, 2021 Tr. at 119-120); (State's Ex. 7). Some of the text messages are sexual in nature and reference R.R. engaging in sex acts with the sender and reference intimate photographs and videos of R.R. apparently shared with the sender. (Oct. 14-15, 2021 Tr. at 124-127, 130-

133); (State's Ex. 7). Several of the messages warn R.R. to stay away from the sender's husband. (State's Ex. 7); (Oct. 14-15, 2021 Tr. at 120-121). Additionally, many of the messages reference R.R.'s personal information, such as the names of her employer, co-workers, and pastor. (State's Ex. 7); (Oct. 14-15, 2021 Tr. at 121-124, 128-132). Furthermore, several of the messages use insulting and degrading language toward R.R. (State's Ex. 7); (Oct. 14-15, 2021 Tr. at 123-124, 128-129, 131).

{¶19} While reviewing State's Exhibit 7, R.R. stated that she was especially concerned by several messages that referenced a white pick-up truck. (State's Ex. 7); (Oct. 14-15, 2021 Tr. at 132-134). Specifically, on November 17, 2020, she received a message from an unknown number which said, "Hi, [R.R.] thanks for the chat and the invite[.] I'm here[.] [Y]ou want me to park in front of the white truck[?]" (State's Ex. 7). R.R. was particularly troubled by the message because there actually was a white pick-up truck belonging to R.R.'s boyfriend that was parked outside her residence at the time she received the messages. (Oct. 14-15, 2021 Tr. at 116-118, 133-134). Furthermore, R.R. confirmed that she did not invite anyone to her home that night. (Oct. 14-15, 2021 Tr. at 134).

{¶20} Additionally, D. Robyn Thacker, Risner's friend, confirmed that in a Facebook Messenger conversation on November 15, 2020, Risner stated, "[R.R.] moved her bf in and [her niece] both* * *. [W]e seen [sic] her and her boyfriend[.]

-11-

[H]e's shorter then [sic] her[.]" (Oct. 14-15, 2021 Tr. at 247); (State's Ex. 54). In the messages, Risner explained to Thacker that R.R.'s boyfriend had been at R.R.'s house "all week." (Oct. 14-15, 2021 Tr. at 244-246);(State's Ex. 54). Risner also told Thacker that "[R.R.'s boyfriend] has a white truck that's been at [R.R.'s residence]." (Oct. 14-15, 2021 Tr. at 246-247); (State's Ex. 54).

{¶21} Detective Terry Sneary, a digital forensic examiner with the Hardin County Sheriff's Department, was certified as an expert in forensic digital analysis. (Oct. 14-15, 2021 Tr. at 307-308). Detective Sneary identified State's Exhibit 73 as Risner's iPhone, on which Detective Sneary performed a digital analysis using Cellebrite software. (*Id.* at 309-310); (State's Ex. 73). Detective Sneary identified State's Exhibit 12 as a portion of the extraction report for State's Exhibit 73. (Oct. 14-15, 2021 Tr. at 311-312); (State's Ex. 12). Detective Sneary also identified State's Exhibit 13 as his written report detailing his findings. (Oct. 14-15, 2021 Tr. at 314); (State's Ex. 13).

{¶22} Detective Sneary's extraction report also contained four GPS coordinates for Risner's iPhone on November 18, 2020. (State's Ex. 12). All four of the GPS coordinates corresponded to 59 Grape Street, R.R.'s address. (*Id.*); (Oct. 14-15, 2021 Tr. at 314-319). Investigator Scott, the primary investigator in the instant case, testified that she provided the coordinates from the extraction report to Nathan Saylor, the GIS coordinator for Hardin County. (Oct. 14-15, 2021 Tr. at

205, 451). Saylor plotted the coordinates and a 500-foot buffer around 59 Grape Street. (State's Ex. 18); (Oct. 14-15, 2021 Tr. at 201-203). State's Exhibit 18, which is a copy of Saylor's report with respect to the coordinates, reveals that the coordinates are within the 500-foot buffer plotted on the map. (State's Ex. 18); (Oct. 14-15, 2021 Tr. at 202-204). Although Saylor acknowledged there is a small margin of error inherently associated with mapping coordinates, the margin of error is only about 16 feet. (Oct. 14-15, 2021 Tr. at 203-204). Saylor confirmed that, even factoring in a 16-foot margin of error, the coordinates provided are still within the 500-foot buffer around 59 Grape Street, Kenton, Ohio. (*Id.* at 204); (State's Ex. 12, 18).

**{¶23}** According to Detective Sneary, the extraction report also revealed the presence of an application called "TextNow," which is a free application that allows the user to send text messages over Wi-Fi rather than by utilizing cellular data. (State's Ex. 13); (Oct. 14-15, 2021 Tr. at 330, 333). The TextNow application assigns random phone numbers to the user allowing the user to send text messages through the application which appear to the receiver to be coming from different telephone numbers. (Oct. 14-15, 2021 Tr. at 330-331). The user identification associated with the TextNow application found on Risner's phone was gangbanga[***]@juno.com[3]. (*Id.* at 329); (State's Ex. 13). Detective Sneary stated

---

[3] The username associated with the TextNow application on State's Exhibit 73 includes the name of R.R.'s relative who was living with R.R. during the relevant time. (State's Ex. 13); (Oct. 14-15, 2021 Tr. at 115-

that his extraction report of Risner's phone included four outgoing messages to R.R.'s phone number on December 15, 2020. (State's Exs. 13, 14). The TextNow messages sent to R.R. from Risner's phone number reference R.R. by her first name and describe an alleged recent sexual encounter with R.R. (State's Ex. 14). Moreover, when Detective Sneary performed an extraction on R.R.'s phone, he found the aforementioned messages classified as incoming messages. (State's Ex. 15); (Oct. 14-15, 2021 Tr. at 341-342, 346).

{¶24} On January 1, 2021, Investigator Scott received subpoenaed information from TextNow phone numbers associated with the TextNow account that was detailed in the extraction report of Risner's phone. (Oct. 14-15, 2021 Tr. at 404). State's Exhibit 43, a document Investigator Scott prepared from information she subpoenaed from Text Now and Detective Sneary's extraction report, details the messages, usernames, email addresses, internet provider ("IP") addresses, and registration dates of the TextNow account associated with Risner's phone. (*Id.* at 403-404); (State's Ex. 43). The information Investigator Scott received in response to a subpoena to TextNow confirmed the username, phone number, and email address associated with the TextNow account located on Risner's phone. (State's Ex. 43); (Oct. 14-15, 2021 Tr. at 404, 407). Additionally, TextNow verified that four messages were sent from the TextNow account found

---

116). Because the family member may be a minor, in accordance with this court's policy, we will only use her first initial.

on Risner's phone to R.R.'s phone number. (State's Ex. 43); (Oct. 14-15, 2021 Tr. at 403-404). Furthermore, when Investigator Scott reviewed subpoenaed information for the TextNow number that sent the messages to R.R., she observed that several of the usernames and emails associated with the account referenced R.R.'s name, many in a derogatory manner. (State's Ex. 43); (Oct. 14-15, 2021 Tr. at 410-411).

**{¶25}** Detective Sneary stated the extraction report of Risner's phone revealed the presence of the application X-VPN, which is a VPN. (State's Ex. 13); (Oct. 14-15, 2021 Tr. at 324-326). Detective Sneary described a VPN as an application used to conceal the user's identity by masking the user's true IP address and location. (Oct. 14-15, 2021 Tr. at 324-326); (State's Ex. 13).

**{¶26}** Detective Sneary further testified that the extraction report of Risner's phone revealed the presence of the Kik Messenger application, a messaging application which can be used over Wi-Fi. (State's Ex. 13); (Oct. 14-15, 2021 Tr. at 333-334). The user account associated with Risner's phone had the username "b[***]lovehoe," which matches the username associated with the FetLife profile, and R.R.'s name as the display name. (Oct. 14-15, 2021 Tr. at 387, 478-480); (State's Ex. 26).

**{¶27}** Investigator Scott testified that she subpoenaed the basic subscriber information for the "b[***]lovehoe" account from Kik Messenger. (State's Ex. 41);

(Oct. 14-15, 2021 Tr. at 391-392). The Kik Messenger basic subscriber data revealed that the account for "b[***]lovehoe" was created on August 27, 2020. (State's Ex. 41); (Oct. 14-15, 2021 Tr. at 391-394). Investigator Scott testified that the IP address associated with the device registering the "b[***]lovehoe" Kik Messenger account was 192.180.83.114. (State's Ex. 41); (Oct. 14-15, 2021 Tr. at 398-401, 454-455). Investigator Scott testified that when she traced that IP address, it came back to a location where Risner was living in 2020. (Oct. 14-15, 2021 Tr. at 452-453).

{¶28} Investigator Scott then sent a court order to Charter Communications seeking information associated with the account holder relating to the IP address 192.180.83.114. (State's Ex. 49); (Oct. 14-15, 2021 Tr. at 454-455). According to the information provided by Charter Communications, on August 27, 2020 the IP address belonged to Daniel Murphy residing at 421 W. Columbus St., Kenton, Ohio. (State's Ex. 49); (Oct. 14-15, 2021 Tr. at 455-456). However, Investigator Scott was familiar with Murphy and knew that he was incarcerated during the time the Kik Messenger account was created. (Oct. 14-15, 2021 Tr. at 457). Indeed, Murphy's former landlord, Ryan Atchley, testified that he evicted Murphy from 421 W. Columbus Street in on June 24, 2020. (*Id.* at 274-275); (State's Ex. 51). Following Murphy's eviction from the property in June 2020, Atchley agreed to rent 421 W. Columbus Street to Risner. (Oct. 14-15, 2021 Tr. at 276).

{¶29} Furthermore, when Investigator Scott compared the IP addresses she received from TextNow and Kik Messenger, she was able to connect the IP addresses to the same device, namely Risner's phone, on the same date. (Oct. 14-15, 2021 Tr. at 417-419); (State's Ex. 43).

{¶30} Additionally, the Cellebrite extraction of Risner's phone revealed the presence of a number of screenshots taken from FetLife. (State's Exs. 13, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39); (Oct. 14-15, 2021 Tr. at 328-329, 336-337). Moreover, the screen shots extracted from Risner's phone included the user's profile photo as a thumbnail in the upper-right corner of the screen shot. (State's Exs. 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39); (Oct. 14-15, 2021 Tr. at 337-340). Investigator Scott testified that the screenshots from the FetLife were significant because the profile picture located in the upper-right corner was a nude photograph of R.R. that was the profile picture of the "b[***]lovehoe" account. (State's Exs. 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39); (Oct. 14-15, 2021 Tr. at 337-338). According to Investigator Scott, this indicates that whoever accessed FetLife on Risner's phone was logged into the "b[***]lovehoe" user account. (Oct. 14-15, 2021 Tr. at 338-340).

{¶31} Moreover, when Detective Scott reviewed the images Detective Sneary extracted from Risner's phone, she located multiple images that were consistent with the images uploaded to the "b[***]lovehoe" FetLife account,

including intimate images of R.R. (State's Ex. 59); (Oct. 14-15, 2021 Tr. at 470-471). Furthermore, Detective Scott was able to determine that the first photograph was uploaded to the "b[***]lovehoe" FetLife account on August 2, 2020. (Oct. 14-15, 2020 Tr. at 471);(State's Ex. 59).

**{¶32}** Investigator Scott described State's Exhibit 71 as a summary of all incoming and outgoing messages sent and received from Risner's phone on December 13, 2020 to December 15, 2020. (State's Ex. 71); (Oct. 14-15, 2021 Tr. at 360). The document includes multiple platforms including Kik Messenger, TextNow, FetLife, instant messages, and standard text messages which was compiled from Detective Sneary's extraction of Risner's phone and court-ordered data Investigator Scott received from the relevant messaging and application services. (State's Ex. 71); (Oct. 14-15, 2021 Tr. at 475). A review of State's Exhibit 71 reveals that Risner's phone was accessing multiple services and applications within minutes of sending sexually-suggestive messages via Kik Messenger to other Kik Messenger users under the "b[***]lovehoe" account. (State's Ex. 71).

**{¶33}** After reviewing the record, we find sufficient evidence to support each of Risner's convictions. We note that, with respect to his arguments relating to the sufficiency of the evidence supporting his convictions, Risner's arguments are general and do not reference the specific convictions. For instance, Risner argues that a CPO pursuant to R.C. 3113.31 was not in effect during the dates of the

-18-

offenses. Specifically, Risner argues that the protection order filed on June 2, 2020, was not a protection order pursuant to R.C. 3113.31. We disagree.

**{¶34}** The State introduced three CPOs requiring Risner to stay at least 500 feet from R.R. and forbidding him from having direct or indirect contact with her. As detailed above, State's Exhibit 1, a CPO issued on June 12, 2019 in Hardin County Common Pleas Court case number 2019-3051-DRH explicitly states that it was issued pursuant to R.C. 3113.31. The CPO specified that it was in effect until June 12, 2020. State's Exhibit 2, a CPO issued on August 26, 2019, served as an amendment to the original CPO (State's Exhibit 1) and allowed for Risner to attend some of his minor children's athletic events. The document specified that the protection order expired on August 26, 2020. State's Exhibit 2 also explicitly states that it was issued pursuant to R.C. 3113.31.

**{¶35}** On June 2, 2020, the Hardin County Court of Common Pleas issued a third protection order in Hardin County case number 2019-3051-DRH. The filing states that Risner has "failed to comply with the terms and conditions of the original civil protection order" specifically by "mov[ing] to a residence a few houses from [R.R.'s residence] which supports the continued mind games and mental abuse." (State's Ex. 3). Accordingly, the document states that "[t]he civil protection order * * * remains in full force and effect and is extended to June 2, 2022."

**{¶36}** Risner argues that the third protection order, which was in effect at the time of the offenses, was not issued pursuant to R.C. 3113.31. We disagree. Although State's Exhibit 3 does not explicitly reference R.C. 3113.31, the express purpose of the document is to extend the protection order issued pursuant to R.C. 3113.31 on August 26, 2019 for an additional two years. Accordingly, a review of the relevant documents indicates that a protection order issued pursuant to R.C. 3113.31 was in effect at the time of the offenses.

**{¶37}** Next, Risner argues that his convictions are supported by insufficient evidence because the evidence produced at trial "failed to prove that it was [Risner] that initiated the events in question." (Appellant's Brief at 6). Risner alleges that because there was no eyewitness testimony establishing that he was the one making the contacts with R.R., the evidence is insufficient to support his convictions. We disagree.

**{¶38}** Here, Risner essentially argues that his convictions are not supported by sufficient evidence because some of the elements of the offenses are supported by circumstantial rather than direct evidence. However, "circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph one of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). "A

conviction may be sustained based on circumstantial evidence alone." *State v. Franklin*, 62 Ohio St.3d 118, 124 (1991). "[I]n some instances, certain facts may be established by circumstantial evidence" and a conviction based thereon is "no less sound than one based on direct evidence." *State v. Smith*, 12th Dist. Butler No. CA2008-03-064, 2009-Ohio-5517, ¶ 80. "If the state 'relies on circumstantial evidence to prove an [essential] element of the offense charged, there is no [requirement that the evidence must be] irreconcilable with any reasonable theory of innocence in order to support a conviction[,]' so long as the jury is properly instructed as to the burden of proof, i.e., beyond a reasonable doubt." *State v. Bates*, 6th Dist. Williams No. WM-12-002, 2013-Ohio-1270, ¶ 50, quoting *Jenks* at paragraph one of the syllabus.

{¶39} Accordingly, we are not persuaded by Risner's arguments that the evidence was insufficient to support his convictions because certain facts were established by circumstantial rather than direct evidence. Rather, an overwhelming amount of circumstantial evidence was presented at trial that, if believed, could establish that Risner was the perpetrator of the offenses.

*Manifest Weight*

{¶40} We next address Risner's arguments that his convictions are against the manifest weight of the evidence. In support of his position, Risner makes three arguments, which we address in turn.

{¶41} First, Risner argues that his convictions are against the manifest weight of the evidence due to alleged "errors" by the detectives who investigated the case. Risner alleges that the alleged errors present in the State's evidence rise to the level of being "unacceptable." (Appellant's Brief at 8-9).

{¶42} Specifically, Risner points to State's Exhibit 13, Detective Sneary's report relating to the extraction of Risner's phone. During his testimony, Detective Sneary admitted that his original report, filed on December 24, 2020 contained a typographical error relating to some of the GPS coordinates. The record indicates Detective Sneary erroneously copied and pasted the GPS coordinates for one time point into several different timepoints. Accordingly, on September 30, 2021, Detective Sneary submitted a supplemental update to his report wherein he acknowledged, explained, and corrected the error. (State's Ex. 13). Detective Sneary explained for the jury the error in his original report and his correction via a supplemental report. (Oct. 14-15, 2021 Tr. at 314-316); (State's Ex. 13). Accordingly, there was no incorrect evidence presented to the jury that could have misled them.

{¶43} Next, Risner argues that R.R. was not a credible witness and that the jury committed reversible error by believing her testimony. Specifically, Risner alleges that R.R. posted nude photographs of herself on the internet approximately three years ago, and that she lied by denying the same during her testimony. Risner

contends that because R.R. was allegedly not forthcoming about posting intimate photographs of herself online several years before the relevant offenses, the jury abused its discretion by considering her unrefuted testimony.

**{¶44}** We reject Risner's argument. "'Although we review credibility when considering the manifest weight of the evidence, the credibility of witnesses is primarily a determination for the trier of fact.'" *State v. Chute*, 3d Dist. Union No. 14-22-02, 2022-Ohio-2722, ¶ 30, quoting *State v. Banks*, 8th Dist. Cuyahoga No. 96535, 2011-Ohio-5671, ¶ 13, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.

**{¶45}** Here, the jury had the opportunity to observe R.R. and the State's witnesses and, as such, "is best able 'to view the witnesses and observe their demeanor, gestures[,] and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Banks* at ¶ 31, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80-81 (1984). Furthermore, the jury "was in the best position to weigh the evidence, and was free to believe all, some or none of [R.R.'s] testimony." *State v. Muhleka*, Montgomery No. 19827, 2004-Ohio-1822, ¶ 53, citing *State v. Jackson*, 86 Ohio App.3d 29, 33 (4th Dist.1993). Additionally, Risner had the opportunity to present evidence impeaching R.R.'s testimony regarding whether or not she posted intimate photographs of herself several years prior, but

he failed to present such evidence, if it exists. Regardless, upon review of the record, we do not conclude that the jury's witness-credibility determinations were unreasonable in light of the evidence presented at trial.

{¶46} Finally, Risner argues that his convictions were against the manifest weight of the evidence because a "multitude of inadmissible evidence, testimony, and exhibits * ** were erroneously admitted [over] objection." (Appellant's Brief at 9). In support of his argument, Risner alleges that the trial court erred by admitting several pieces of evidence over Risner's objection. Risner summarily argues that the admission of several exhibits and pieces of testimony rendered his convictions against the manifest weight of the evidence. However, this claim is not a proper manifest-weight or sufficiency-of-evidence argument. Furthermore, Risner fails to properly develop any argument he may have relating to the admissibility of the evidence. Moreover, we decline to adopt Risner's presumption that the trial court erred by admitting every piece of evidence that he objected to at trial.

{¶47} Notwithstanding Risner's arguments, we have little difficulty concluding that his convictions are not against the manifest weight of the evidence. As previously discussed, the State presented overwhelming evidence demonstrating Risner's guilt. "A verdict is not against the manifest weight of the evidence because the finder of fact chose to believe the State's [evidence] rather than the defendant's

version of the events." *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16. Thus, Risner's convictions are not against the manifest weight of the evidence.

{¶48} Risner's first assignment of error is overruled.

**Assignment of Error No. II**

**Appellant received ineffective assistance of counsel due to counsel's serious errors so deficient that it deprived Appellant of a fair trial because counsel failed to subpoena a significant witness, and because the cumulative effects of counsel's errors resulted in ineffective assistance of counsel as a whole.**

{¶49} In his second assignment of error, Risner argues that he received ineffective assistance of trial counsel. Risner claims his trial counsel was ineffective for failing to subpoena an exculpatory witness Risner claims is material to his defense.

{¶50} "In criminal proceedings, a defendant has the right to effective assistance of counsel under both the United States and Ohio Constitutions." *State v. Evick*, 12th Dist. Clinton No. CA2019-05-010, 2020-Ohio-3072, ¶ 45. A defendant asserting a claim of ineffective assistance of counsel must establish: (1) counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St. 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). In order to show counsel's conduct was deficient or unreasonable, the

defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 689. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic decisions, even if unsuccessful, do not generally constitute ineffective assistance of counsel. *State v. Frazier*, 61 Ohio St.3d 247, 255 (1991). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989).

**{¶51}** Prejudice results when "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Bradley* at 142, quoting *Strickland* at 694. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.,* quoting *Strickland* at 694.

**{¶52}** The record indicates that after the State rested, Risner's trial counsel requested a continuance so she could subpoena a witness, namely Risner and R.R.'s 19-year-old son, Riley. According to the record, Riley was at the courthouse during the first and second days of trial; however, he apparently voluntarily left the building

prior to the defense's case-in-chief. The trial court denied Risner's trial counsel's motion for a continuance.

**{¶53}** Risner claims that Riley had access to Risner's cellular phone and "may have testified he or his brother had made the contacts" with the victim. (Appellant's Brief at 12). Risner further postulates that Riley may have testified that R.R. posted intimate photographs of herself on the internet in 2017, thereby impeaching some of R.R.'s testimony.

**{¶54}** "The decision whether or not to call witnesses is generally a matter of trial strategy and, absent a showing of prejudice, does not deprive a defendant of effective assistance of counsel." *State v. Bofia*, 3d Dist. Henry No. 7-03-12, 2004-Ohio-3018, quoting *State v. Utz*, 3d Dist. Crawford No. 3-03-38, 2004-Ohio-2357, ¶ 12.

**{¶55}** Here, Risner invites us to indulge his assumption that Riley would have testified that either Riley or his younger brother, who is a minor, used Risner's phone to send sexually-explicit messages to their mother and created an account with their mother's name and likeness on a sexually-oriented social-networking website and had contact with other members of the website while posing as their mother, all without Risner's knowledge or consent. "Inviting an appellate court to speculate about hypothetical material is not proper grounds for reversal under ineffective assistance of counsel." *State v. Manley*, 3d Dist. Allen No. 1-17-06,

2017-Ohio-8271, ¶ 31. Moreover, not only is Risner's assumption based entirely on speculation, it defies logic and is inconsistent with the evidence presented at trial. Furthermore, it is perfectly reasonable for Risner's trial counsel to conclude that Riley's testimony could lead to damaging evidence against Risner. Accordingly, we are unwilling to speculate that the outcome of the trial would have been different if trial counsel had subpoenaed Riley. *See State v. Norville*, 3d Dist. Seneca No. 13-18-14, 2018-Ohio-4467, ¶ 29.

{¶56} Risner's second assignment of error is overruled.

*Appellate Case Number 6-21-12*

{¶57} In his appellate brief, Risner assigns error only with respect to case number CRI 20212080. None of Risner's arguments on appeal relate to his convictions and sentences in case number CRI 20202053. App.R. 16 requires that the appellant's brief contain "[a] statement of the assignments of error presented for review" as well as "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions." App.R. 16(A)(3), (7). Here, Risner's brief does not contain a statement of the assignments of error specific to case number CRI 20202053. Therefore, appellate case number 6-21-12, Risner's appeal from the trial court's judgment in case number CRI 20202053, is dismissed. *See State v. Boedicker*, 3d

Case Nos. 6-21-12, 6-21-13

Dist. Allen Nos. 1-22-03 and 1-22-04, 2022-Ohio-2992, ¶ 29; *State v. Kilgour*, 3d Dist. Marion Nos. 9-16-04 and 9-16-05, 2016-Ohio-7261, ¶ 2.

*Conclusion*

**{¶58}** For the foregoing reasons, Risner's assignments of error are overruled. Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the Hardin County Court of Common Pleas in case number CRI 20212080, appellate case number 6-21-13. The appeal in case number CRI 20202053, appellate case number 6-21-12, is dismissed.

*Appeal Dismissed in Case No. 6-21-12*

*Judgment Affirmed in Case No. 6-21-13*

**SHAW and WILLAMOWSKI, J.J., concur.**

**/jlr**